# Exhibit "A"

IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | |
|---|---|
| IN RE PROJECT VERTE, INC. | ) </br> ) C.A. No. 2022-0696-MTZ </br> ) </br> ) |

**SUPPLEMENTAL CONSENT ORDER APPROVING
THE SALE OF PROJECT VERTE'S
<u>TECHNOLOGY ASSETS TO J&A TECH HOLDINGS LLC</u>**

Upon due and further consideration of the Motion of Receiver (Don Beskrone) for Entry of Order Approving the Engagement of Hilco Streambank to Market and Sell Project Verte's Technology Business and Related Assets (the "<u>Motion</u>") (D.I. 64), the Geekplus Response filed in response thereto (D.I. 74), the Receiver's reply in support of the Motion (D.I. 80), the Receiver's December 6 Report and Supplement and all supporting papers filed in connection therewith ("<u>December 6 Report and Supplement</u>") (D.I. 101), and the Receiver's Second Supplement in Support of Sale of Project Verte Inc.'s Technology Assets (D.I. 117) ;[1] the Affidavits of Service filed on November 10, 2022 (D.I. 73) and January 11, 2023 (D.I. 124); upon Court proceedings held on November 29, 2022, December 7, 2022, and January 19, 2023; and for good cause shown, the Court finds as follows:

    A.    The Motion was served upon the parties identified in exhibit B to the Affidavits of Service. The Geekplus Response was the only objection or response

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

received by the Court and no other informal objection or response was received by the Receiver. The Geekplus Response has been resolved.

B.  The engagement of Hilco Streambank to market and sell Project Verte's Technology Business and related assets (together, the "Technology Assets"), as discussed and defined in the Motion, was approved by the Court's order entered on November 29, 2022 (the "Hilco Engagement Order").[2]

C.  The payment of the Engagement Fee under the terms and provisions of the Hilco Agreement having been authorized and paid.

D.  The Court has reviewed the December 6 Report and Supplement under which the Receiver represents that he followed the provisions of paragraph 3 of the Hilco Engagement Order.

E.  The Receiver represents that the bidding and sale process (the "Sale Process") conducted for the Technology Assets was in accordance with the process and procedures set forth in the December 6 Report and Supplement.

F.  The auction of Project Verte's Technology Assets scheduled for November 30, 2022, was cancelled and the Receiver represents that only one qualified bid was received for those assets and therefore no auction was necessary.

G.  The sale of Project Verte's Technology Assets is in the best interests of the Company's receivership estate.

---

[2] D.I. 85.

H.  The Receiver having determined the sale of the Technology Assets to J&A Tech Holdings LLC ("Buyer") is fair and reasonable because it was the highest and best offer received pursuant to the fair and reasonable Sale Process.

I.  The Motion of Receiver (Don Beskrone) for Entry of An Order Approving Settlement Term Sheet (AJ Group Creditors)[3] having been withdrawn without prejudice.

**IT IS HEREBY ORDERED THAT:**

1.  The Motion is further **GRANTED**, as set forth herein.

2.  The sale to Buyer of the Technology Assets is approved under the terms of the form of Bill of Sale attached hereto as **Exhibit A**.

3.  The Buyer shall pay to Hilco Streambank the purchase price of $1.25 million (net of the $1.125 million deposit already paid by Buyer to Hilco Streambank in connection with Buyer's submission of its qualified bid) for the purchase of the Technology Assets. In conjunction with a sale closing, Hilco Streambank shall transfer the purchase price (including the currently held Deposit) to the Receivership account designated by the Receiver, net of any Secured Party Transaction Fee and any costs due Hilco Streambank under the terms of its approved Engagement Agreement and Paragraph 6 hereof. Such net sale proceeds shall remain with the Receiver subject to further order of this Court or another court of competent

---

[3] D.I. 77.

jurisdiction. Such net sale proceeds will be held and/or disbursed in accordance with the provisions of the Receivership Order, Rule 152 of the Court of Chancery Rules, and the terms and provisions of any further order of this Court or another court of competent jurisdiction. Within thirty (30) days of entry of this Order, the Court shall set a date for a status conference to discuss the final disposition (including a final dismissal) of this receivership matter, including (as necessary) any disposition of net sale proceeds received from the sale of the Technology Assets.

4. For the avoidance of doubt, none of the assets Geekplus claims an ownership interest in shall be included as part of the sale of the Technology Assets. All parties' rights, claims, arguments, defenses, and remedies in connection therewith are fully preserved and subject to later determination or agreement.

5. The AJ Group expressly consents to the sale of the Technology Assets and expressly consents to the attachment of its liens, claims, and encumbrances (the "<u>Claims</u>") to the net proceeds of sale of the Technology Assets, with the same validity, extent, and priority the AJ Group Claims had prior to such sale; *provided however* that conditioned upon entry of this Order, the AJ Group shall not recover any distribution from the sale proceeds of the Technology Assets that are the subject of Paragraph 3 herein. For the avoidance of any doubt, entry of this Order is without prejudice to any and all parties' rights under that certain Amended and Restated Intercreditor Agreement entered into as of June 18, 2019, by and among TNJ

Holdings Inc., AC Group Holdings LLC, Chaluts Trust, JG Group Holdings LLC, JGFT LLC, PGFT LLC and Project Verte Inc.[4]

6. In addition to payments to Hilco Streambank approved by Paragraph 1 of the Hilco Engagement Order and already paid to Hilco Streambank, Hilco Streambank is authorized and approved to be compensated and reimbursed in accordance with the terms of the Hilco Agreement and this Order, including out of sale proceeds. Hilco Streambank is authorized to receive payment of its Secured Party Transaction Fee and its costs due under the Hilco Engagement Agreement, effective immediately upon a sale closing, including payment to be received from Buyer's deposit currently held by Hilco Streambank.

7. The Receiver is authorized and directed to take all actions necessary to effectuate the sale and transfer of the Technology Assets to the successful purchaser, including but not limited to negotiating, executing, and delivering such other and further documents (including the final form of bill of sale attached hereto as Exhibit A or assignment(s) of intellectual property assets) as may be deemed necessary or appropriate to implement and consummate the transfer of the Technology Assets.

8. This Court retains jurisdiction to interpret, enforce, and implement the terms and provisions of this Order.

---

[4] D.I. 101, Exhibit 5.

SO ORDERED this 20th day of January, 2023.

                                              */s/ Morgan T. Zurn*
                                      Vice Chancellor Morgan T. Zurn

## **Exhibit A**

## BILL OF SALE

This Bill of Sale (the "Bill of Sale") is made effective as of January [    ], 2023 (the "Effective Date") by and between Don Beskrone, Esq., solely in his capacity as the receiver ("Receiver") for, and on behalf of, Project Verte Inc., a Delaware corporation (the "Seller"), in favor of J & A Tech Holdings LLC, as the purchaser, having a business address at c/o S&H Equities, 98 Cuttermill Rd., Suite 390N, Great Neck, NY 11021 ("Purchaser," and together with Seller and the Receiver, the "Parties").

This Bill of Sale is intended to operate as and shall be deemed to constitute a Transfer Statement (as that term is used and defined in Section 9-619 of the Uniform Commercial Code).

WHEREAS, by order August 25, 2022, the Delaware Court of Chancery entered an order appointing the Receiver. (*See* Case No. 2022-0696-MTZ, D.I. 22);

WHEREAS, Seller operates a software as a service ("SaaS") business (the "Technology Business"), including but not limited to unified commerce, order management, integration management, warehouse management, and transportation management services, and in connection therewith, Seller owns and utilizes certain assets and agreements supporting the Technology Business, including, without limitation, certain intellectual property (together with the Technology Business, the "Assets"). The Assets are described in more detail on Schedule 1 attached hereto;

WHEREAS, Seller (acting through the Receiver) engaged Hilco IP Services, LLC d/b/a Hilco Streambank (the "Agent") to market and solicit qualified bids for the sale of the Assets;

WHEREAS, November 28, 2022, was set as the deadline for the acceptance of qualified bids for the Assets (the "Bid Deadline");

WHEREAS, Purchaser and other bidders executed non-disclosure agreements and were provided access to a data room containing information about the Assets and also were provided an opportunity to attend or view a webinar presentation concerning the Assets, all so that they might independently evaluate and assess the value of the Assets;

WHEREAS, qualified bids for the Assets were solicited from Purchaser and other interested bidders. The only timely qualified bid for the Assets submitted by the Bid Deadline was submitted by Purchaser;

WHEREAS, because the only timely and qualified bid received for the Assets was Purchaser's bid in the amount of Eleven Million Two Hundred Fifty Thousand Dollars ($11,250,000.00) (the "Purchase Price**[1], no auction for the Assets was held on November

---

[1] **The Purchaser's initial bid of $11,250,000 consisted of (i) a cash component of

30, 2022. The bid submitted by Purchaser constituted the best and highest offer made for the Assets, and therefore the Receiver on behalf of Seller and in consultation with the Agent canceled any November 30 auction and determined that Purchaser was the successful bidder for the Assets;

WHEREAS, pursuant to applicable law and the Court of Chancery's sale approval order dated January [    ], 2023 [D.I. ----], the Receiver and Seller are authorized to sell, transfer, and assign all of their rights, title and interest in the Assets to Purchaser pursuant to this Bill of Sale and in consideration of the Purchase Price; and

WHEREAS, Purchaser acknowledges that Seller and Receiver make no representation or warranty regarding the exact value, quantity, or quality of the Assets listed;

NOW, THEREFORE, in consideration of the Purchase Price and the foregoing premises, which constitute good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Seller and Receiver do hereby grant, bargain, sell, assign, transfer and convey unto Purchaser, its legal representatives, designees, successors and assigns, all of Seller's and Receiver's rights, title and interests in and to the Assets, upon and subject to the terms described herein.

THE ASSETS ARE SOLD "AS IS" AND "WHERE IS" AND WITH ALL FAULTS, AND SELLER AND RECEIVER MAKE NO REPRESENTATION OR WARRANTY WHATSOEVER WITH RESPECT TO THE TRANSFERRED ASSETS, INCLUDING, WITHOUT LIMITATION, ANY (a) WARRANTY OF MERCHANTABILITY; (b) WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE; (c) WARRANTY OF TITLE; (d) WARRANTY AGAINST INFRINGEMENT OF INTELLECTUAL PROPERTY RIGHTS OF A THIRD PARTY; OR (e) WARRANTY THAT THIS TRANSFER COMPLIES WITH THE PROVISIONS OF THE UNIFORM COMMERCIAL CODE; IN EACH CASE, WHETHER ANY SUCH REPRESENTATION WOULD ARISE BY OPERATION OF LAW, COURSE OF DEALING, COURSE OF PERFORMANCE, USAGE OF TRADE OR OTHERWISE. BY ACCEPTING THE ASSETS AND THIS BILL OF SALE, PURCHASER ACKNOWLEDGES IT HAS NOT RELIED ON ANY REPRESENTATION OR WARRANTY MADE BY THE RECEIVER, SELLER, OR ANY OTHER PERSON ON EITHER'S BEHALF.

This Bill of Sale shall inure to the benefit of and be enforceable by the Parties and each of their respective successors and assigns. The Parties agree this Bill of Sale (together with any separate reasonably requested and executed assignment of intellectual property assets such as trademarks or patent applications), and any claims or disputes of any kind or

---

$1,250,00 ("Cash Component") and (ii) a credit bid component of $10,000,000 ("Credit Bid Component"). Because no other qualified bids for the Assets were received, the Purchaser's bid by its terms automatically converted to a cash bid of $1,250,000 to be paid by Purchaser in cash at closing (which payment will include application of Purchaser's Deposit held by the Agent).

nature whatsoever arising out of or in any way relating thereto, directly or indirectly, shall be governed by and construed in accordance with the laws of the State of Delaware without regard to any choice-of-law principles that would dictate the application of the laws of another jurisdiction.  The Parties further agree any dispute arising out of this Bill of Sale or the transactions described herein shall be adjudicated before a state or federal court of appropriate jurisdiction located in Wilmington, Delaware and the Parties hereto irrevocably consent to the exclusive jurisdiction of such courts.

This Bill of Sale, together with any separate executed assignment of intellectual property assets, constitutes the entire agreement between the Parties as to the subject hereof; it shall be construed and interpreted fairly, in accordance with the plain meaning of its terms; and there shall be no drafting presumption or inference against any Party in construing or interpreting the provisions hereof, as each Party acknowledges it has reviewed the contents hereof with counsel of their choice prior to execution.

This Agreement may be executed in counterparts, each of which shall be an original, but which together shall constitute one and the same instrument.  This Agreement may be executed and delivered by email in .pdf format.  Any electronic signatures delivered by email shall have the same legal effect as manual signatures.

Each person signing below represents and warrants they have full authority to sign for and bind the respective signing party.

IN WITNESS WHEREOF, this Bill of Sale has been duly executed by the undersigned as an instrument under seal as of the date first above written.

**SELLER:**

PROJECT VERTE, INC.

By: _____
Name:  Don A. Beskrone, Esq.
Title: Court-Appointed Receiver for Project Verte, Inc.

**PURCHASER:**

J & A Tech Holdings LLC

By: _____
Name: Amir Chaluts
Title: Authorized Signatory

WITNESS:

_____



**Schedule of Assets**

**Trademarks**

| Mark | Status | USPTO Serial No./Reg. No. |
|---|---|---|
| VERTE | Notice of Allowance | SN 87954479 |
| MYVERTE | Pending | SN 88724962 |
| [logo] | Registered Jan. 12, 2021 | RN 624810 |
| TWOVERTE | Notice of Allowance | SN 88724963 |

**Patent Applications**

| Title | Application No. | Status |
|---|---|---|
| AN ENHANCED BLOCK-CHAIN MASTER NODE COMPUTING STACK | 17/159988 | Published (USPTO Pub. No. 20210234666) |
| AN ENHANCED BLOCK-CHAIN MASTER NODE COMPUTING STACK | PCT/US2021/015275 | Published (WIPO Pub. No. WO/2021/154844) |

**Domain Names**

ProjectVerte.com
ProjectVerte.io
VerteChain.com
VerteZero.com
MyVerte.com

**\*\*\* For the avoidance of doubt, and notwithstanding its purchase of Seller Trademarks and Domain Names, Purchaser agrees that following a sale closing, Seller and Receiver need not change or otherwise cease use of Seller's corporate name, including the use of Seller's name in any case caption or in correspondence, forms, agreements, communications with creditors, court filings, etc. Purchaser further agrees that to the extent necessary, any current Seller personnel may continue to use for the conduct of Seller business any current email or other electronic communication addresses that include the name "Project Verte". Seller and Receiver agree that to the extent possible and consistent with applicable law, neither will utilize the purchased Trademarks on any new documentation created by Seller or Receiver after a sale closing.**

**Software**

The Unified Commerce portal for centralized management of Verte Marketplace and all External Marketplaces; the next-generation primary marketplace MyVerte built on the blockchain framework; supply chain management systems covering orders, shipping, warehouse, and transport; proprietary blockchain systems; VerteZero, a middleware and integration tool to manage communications across all the systems, including our proprietary blockchain system; integrated payment and billing platforms; AI technology providing predictive analytics and acceleration tools; and all other proprietary standalone products and functions integrated with the Unified Commerce platform. Platform includes code libraries and repositories.

| Category | Assets (IP) | | Version | Production |
|---|---|---|---|---|
| E-Commerce | Unified Commerce | Standalone Product | 2.0 | Developed and currently marketed for sale |
| E-Commerce | Unified Commerce FrontEnd | Combined in Unified Commerce | 9 | Developed and currently marketed for sale |
| E-Commerce | MyVerte MarketPlace | Standalone Product | 1.0 | Developed and currently marketed for sale |
| E-Commerce | CDN | Combined in Unified | 1.5 | Developed and currently marketed for sale |

| | | Commerce | | |
|---|---|---|---|---|
| SupplyChain | Order Management System | Standalone Product | 2.0 | Developed and currently marketed for sale |
| SupplyChain | Verte Shipping | Combined in Unified Commerce | 1.0 | Developed and currently marketed for sale |
| SupplyChain | Warehouse management system | Standalone Product | 1.0 | Developed and currently marketed for sale |
| SupplyChain | Transport Management Software | Standalone Product | 2.0 | Developed and currently marketed for sale |
| Blockchain | VerteChain | Combined in Unified Commerce | 6.0 | Developed and currently marketed for sale |
| Blockchain | VerteWallet | Combined in Unified Commerce | 1.0 | Partially developed |
| Blockchain | VerteExchange | Combined in Unified Commerce | 1.0 | Partially developed |
| Integration | VerteZero | Standalone Product | 3.0 | Developed and currently marketed for sale |
| Payments | VertePay | Combined in Unified Commerce | 1.0 | Developed and currently marketed for sale |
| Payments | Verte Billing | Combined in Unified Commerce | 2.0 | Developed and currently marketed for sale |
| AI | Verte Predictive Analytics | Combined in Unified Commerce | 1.0 | Developed and currently marketed for sale |
| AI | Acceleration tools | Combined in Unified Commerce | 1.0 | Developed and currently marketed for sale |
| Support | Verte Ticketing System | Combined in Unified Commerce | 1.0 | Developed and currently marketed for sale |
| Support | TwoVerte | Standalone Product | 4.0 | Partially developed |

| | | | | |
|---|---|---|---|---|
| Infrastructure | Verte OS | Combined in VerteZero | 8.22 | Developed and currently marketed for sale |
| Infrastructure | Verte Proxy | Combined in VerteZero | 5.1 | Developed and currently marketed for sale |
| Infrastructure | Verte Print Server | Combined in WMS | 3.0 | Developed and currently marketed for sale |
| Infrastructure | Domains and SubDomain | Asset | 1.0 | Developed and currently marketed for sale |
| Infrastructure | Encryption & Compression Patent | Asset | 1.0 | Developed and currently marketed for sale |
| Infrastructure | Verte TM | Asset | 1.0 | Developed and currently marketed for sale |

{01869475;v1 }                                           8

**Technology Business Client Agreements**

- PLATFORM LICENSE AGREEMENT, by and between [Customer 1] and Project Verte, Inc., dated as of April 21, 2021.
- VERTE SOFTWARE AS A SERVICE AGREEMENT, by and between [Customer 2] and Project Verte, Inc., dated as of August 22, 2022.
- VERTE SOFTWARE AS A SERVICE AGREEMENT, by and between [Customer 3] and Project Verte, Inc., dated as of October 28, 2022.
- SOFTWARE AS A SERVICE AGREEMENT, by and between [Customer 4] and Project Verte, Inc., dated as of August 10, 2021.
- VERTE SOFTWARE AS A SERVICE AGREEMENT, by and between [Customer 5] and Project Verte, Inc., dated as of March 31, 2022, and amended as of August 31, 2022.
- PROFESSIONAL SERVICES AGREEMENT, by and between [Customer 6] and Project Verte, Inc., dated as of June 28, 2022.
- VERTE SOFTWARE AS A SERVICE AGREEMENT, by and between [Customer 7] and Project Verte, Inc., dated as of September 30, 2022.
- PILOT AGREEMENT, by and between [Customer 8] and Project Verte, Inc., dated as of September 14, 2022.
- VERTE SOFTWARE AS A SERVICE AGREEMENT, by and between [Customer 9] and Project Verte, dated as of September 6, 2022.
- SOFTWARE AS A SERVICE AGREEMENT, by and between [Customer 10] and Project Verte, dated as of February 7, 2022.
- VERTE SOFTWARE AS A SERVICE AGREEMENT, by and between [Customer 11] and Project Verte, Inc., dated as of April 15, 2022, and amended as of August 28, 2022.
- PROFESSIONAL SERVICES AGREEMENT, by and between [Customer 12] and Project Verte, Inc., dated as of May 17, 2022.
- VERTE SOFTWARE AS A SERVICE AGREEMENT, by and between [Customer 13] and Project Verte, Inc., dated as of October 3, 2022.
- VERTE SOFTWARE AS A SERVICE AGREEMENT, by and between [Customer 14] and Project Verte, Inc., dated as of November 4, 2022.
- Any other contracts and agreements that are (i) not listed above or otherwise on this Schedule of Assets and (ii) that arise from and are related to the Technology Business.

**Technology Business Consulting Agreements**

- Intellectual Property Assignment Agreement by and between Project Verte Inc., and API Services Ltd., dated as of May 14, 2020.

- Intellectual Property Assignment Agreement by and between Project Verte Inc., and F1 Computing Solutions Ltd., dated as of May 14, 2020.

- Service Agreement dated as of January 1, 2020, by and between Project Verte Inc. and Project Verte (Israel) Ltd.

**Excluded Assets:**

For the avoidance of doubt, the following are excluded assets and shall not be part of the Assets purchased by Purchaser pursuant to the Court's sale approval order and this Bill of Sale:

- Any cash or cash equivalents of Seller

- Any Seller bank accounts or Seller investment accounts

- Any Seller-owned real property

- Any Seller leases of non-residential real property and any Seller leases of personal property or equipment

- Any Seller contracts and rights and obligations thereunder, *provided however*, the above-identified Seller agreements with Technology Business clients and Technology Business Consulting Agreements are assigned and included as part of the purchased Assets

- Any Seller agreements with employees or independent contractors, *provided however*, the above-identified Technology Business Consulting Agreements are assigned and included as part of the purchased Assets

- Accounts Receivable and any proceeds relating thereto

- Any Seller tangible personal property, furniture, or equipment owned or otherwise used in operation of the Seller's Fulfillment Business, including without limitation any tangible personal property or equipment claimed to be owned by Geekplus America [*See* Receivership, Case No. 2022-0696-MTZ, D.I. 37, 38, and 74 for a more complete description of the assets claimed to be owned by Geekplus]

{01869475;v1 }                                10

- Any computer software that is not owned by Seller, including any computer software owned by Geekplus that Seller uses in connection with operation of Seller's Fulfillment Business

- Any permits or licenses used by Seller in operation of the Seller's Fulfillment Business or any other business not the Technology Business

- Any stock or other equity interests owned by Seller in either an affiliate of Seller or in any third-party entity, including without limitation Flowerdale LLC

- Any claims or causes of action Seller has against any third party, *provided however*, any claims or causes of action arising post-closing under any above-identified Seller agreements are assigned as part of the purchased Assets

- Any Seller insurance policies and any rights or claims of Seller thereunder, including any Seller rights to insurance policy proceeds

- Any Seller federal or state tax refunds, any Seller tax credits, or any tax attributes possessed or otherwise controlled by Seller

- Any Seller security deposits, advances, retainers, or prepaid expenses, and any rights or claims of Seller associated therewith