**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>PROJECT VERTE INC.,<br><br><br>Debtor. | Chapter 7<br><br>Case No. 23-10101-LSS<br><br>**Hearing Date: TBD**<br>**Obj. Deadline: TBD** |

**CHAPTER 7 TRUSTEE'S MOTION FOR ORDER (A) AUTHORIZING
THE TRUSTEE TO OBTAIN POSTPETITION FINANCING AND TO
GRANT SUPERPRIORITY LIENS PURSUANT TO 11 U.S.C. § § 105(A) AND
364(D); AND (B) APPROVING SETTLEMENT AGREEMENT BY AND AMONG THE
CHAPTER 7 TRUSTEE AND AJ GROUP CREDITORS PURSUANT TO RULE 9019**

Alfred T. Giuliano (the "Trustee"), the Chapter 7 trustee for the estate of Project Verte Inc. (the "Debtor"), respectfully requests the entry of an order, pursuant to Sections 105(a) and 364(d) of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq*. (the "Bankruptcy Code"), Rules 4001 and 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 4001-2 and 9013-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules") (i) authorizing the Trustee to obtain postpetition secured financing (the "Postpetition Financing") pursuant to the material terms set forth in the proposed order attached hereto as **Exhibit "A"** (the "Proposed Order"), and incorporated by reference herein, together with all other agreements delivered or executed from time to time in connection therewith (as hereafter amended, restated, supplemented or otherwise modified from time to time, the "Postpetition Loan Documents"), and the budget attached hereto as **Exhibit "B"** and incorporated by reference herein (the "Approved Budget"); and (ii) approving the Settlement Agreement (the "Agreement") by and among the Trustee and the AJ Group

142934977.7

Creditors attached hereto as **Exhibit "C"** and incorporated by reference herein (the "Motion").[1] In support of the Motion, the Trustee respectfully represents as follows:

## PRELIMINARY STATEMENT

1. The Debtor filed this Chapter 7 case to preserve potential causes of action under Chapter 5 of the Bankruptcy Code and pursue a streamlined sale process of its assets to maximize recoveries for creditors. Principle among these assets is the Debtor's 100% interest in its wholly owned subsidiary, Verte Logistics GA LLC ("Verte GA"), who is the current lessee under a potentially valuable lease for property located at 250 Declaration Drive, McDonough, Georgia 30253 (the "Leased Property"). To fund ongoing rent-related obligations and achieve a sale, however, the Trustee requires access to postpetition financing. Subject to approval of this Motion, the Trustee has secured commitments for up to $1,600,000 in financing from their prepetition lender group, the AJ Group Creditors.

2. The Trustee and the AJ Group Creditors have agreed on the terms of a senior secured post-petition financing that will satisfy the Debtor's short-term liquidity needs, fund an efficient and robust marketing and sales process, and provide a meaningful recovery for unsecured creditors. In consultation with his advisors, the Trustee believes that the terms of the proposed Postpetition Financing, together with the terms of the Agreement, are fair, reasonable, the best that can be achieved under the circumstances, and will ensure the preservation of valuable estate assets. Given the Trustee's immediate need for cash and lack of alternatives, the Trustee has determined in his business judgment that the Postpetition Financing and the Agreement are in the best interests of the Debtor's estate.

---

[1] Capitalized terms not defined herein shall have the meaning ascribed to such term in the Proposed Order, and if not in the Proposed Order, the Agreement.

## JURISDICTION

3. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

4. Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

5. The bases for the relief requested herein are sections 105(a) and 364(d) of the Bankruptcy Code; Bankruptcy Rule 4001 and 9019; and Local Rules 4001-2 and 9013-1.

6. Pursuant to Local Rule 9013-1(f), the Trustee consents to the entry of a final judgment or order in connection with this Motion if it is determined that this Court cannot—absent the consent of the parties—enter such final judgment or order consistent with Article III of the United States Constitution.

## BACKGROUND

### A. Bankruptcy Background

7. On January 26, 2023, the Debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code.

8. On January 27, 2023, the Office of the United States Trustee appointed the Trustee as Chapter 7 trustee, which appointment remains in effect [D.N. 6].

9. The Debtor formerly operated as a full circle e-commerce platform that used automated fulfillment centers, proprietary software, and blockchain technology to service its customers.

10. Prior to the Petition Date, the Debtor sold its Technology Business to Tech Holdings pursuant to the Chancery Sale Order dated January 20, 2023.

11. Upon information and belief,[2] the Debtor's most valuable remaining assets include its 100% interest (i.e., the VLLC Interests) in non-debtor affiliate Verte GA—which is the current lessee at the Leased Property under a potentially below market lease—and personal property located at the Leased Property, including fixtures, furniture, and equipment (i.e., the VPersonalty).

12. Subject to the Intercreditor Agreement, the AJ Group Creditors, together with TNJ Holdings Inc. ("TNJ"), are the Debtor's prepetition lenders.

13. To preserve and maximize the value of the Debtor's remaining assets, including the value of the VLLC Interests and the VPersonalty at the Leased Premises for the period February 1-28, 2023, JA Logistics Holdings LLC, a wholly owned affiliate of the AJ Group Creditors, made advances in the aggregate amount of $400,000 (plus additional sums to meet the payroll due on February 21, 2023, and if needed, the rent for the Leased Property due in early March) to Verte GA under that certain Postpetition Promissory Note(s), with such obligations secured by a blanket lien on all of Verte GA's Collateral (the "Postpetition Loans").[3]

14. With the consent and cooperation of Verte GA, and subject to approval of the Postpetition Financing and the Agreement, the Trustee intends on marketing the VLLC Interests (including any separate transfer of Verte GA's interest under the lease for the Leased Property if required or requested) and the VPersonalty in bulk through an auction or private sale for the benefit of all creditors.

B. **Negotiation of the Agreement Between the Parties**

15. The AJ Group Creditors have asserted secured and unsecured claims against the Debtor in connection with the prepetition Credit Agreements (as amended from time to time).

---

[2] The Debtor has not yet filed its schedules of assets and liabilities.
[3] JA Logistics Holdings LLC has assigned the Postpetition Promissory Note(s) to the AJ Group Creditors.

142934977.7

16. The Trustee reviewed the extent, validity and priority of the AJ Group Creditors' interests in the Debtor's assets as well as the circumstances leading up to the entry of the Chancery Sale Order.

17. After such review and extensive arms-length negotiations, the Parties have agreed to resolve all remaining outstanding issues in accordance with the terms set forth herein

## RELIEF REQUESTED

18. By this Motion, the Debtors seek entry of the Proposed Order (i) authorizing the Trustee to obtain senior-secured, superpriority post-petition financing pursuant to the terms and agreements set forth in the Proposed Order and Approved Budget; and (ii) approving the Agreement.

## CONCISE STATEMENT AND DISCLOSURES
## PURSUANT TO BANKRUPTCY RULE 4001

19. In accordance with Bankruptcy Rules 4001 and Local Rule 4001-2, below is a summary of the terms of the proposed Postpetition Financing.[4]

| Summary of Material Terms | | | Location |
|---|---|---|---|
| **Material Terms of Postpetition Financing**<br>*Bankruptcy Rule 4001(c)(1)(B) and (d)(1)(B)*<br><br>*Local Rule 4001-2(a)(i)* | (a) | **Borrower**: Trustee, solely in his capacity as trustee of the Debtor's Estate. | Proposed Order, ¶¶ 2, 4 and 5 |
| | (b) | **Lender**: AJ Group Creditors. | |
| | (c) | **Borrowing Limit**: up to $1,600,000. | |
| | (d) | **Maturity Date**: May 31, 2023. | |
| | (e) | **Interest**: Postpetition Obligations shall bear interest at a | |

---

[4] The Summary of the terms and conditions of the Postpetition Financing as described in this Motion are intended solely for informational purposes and are qualified in their entirety by any Order(s) granting the Motion and the Postpetition Loan Documents. In the event there is any conflict between this Motion, any Order granting the Motion, and the Postpetition Loan Documents, the Order(s) and the Postpetition Loan Documents will control in all respects.

5

| | Summary of Material Terms | Location |
|---|---|---|
| | rate of 4% per annum and shall accrue and be paid upon the earlier of (i) the Maturity Date and (ii) at any time prior thereto upon the occurrence of an Event of Default or Sale Event (each as defined below). | |
| (f) | **Default Interest**: If the Note is not paid by the Maturity Date or upon the occurrence of an Event of Default (as defined below), then the Postpetition Obligations shall thereafter bear interest at a rate of 10% per annum. | |
| (g) | **Prepayment**: During the term of the Note, Borrower shall have the option of paying the unpaid Stated Principal Amount to the Postpetition Lender in advance of the Maturity Date, in whole or in part, at any time and from time to time upon written notice to Postpetition Lender. Borrower shall pay (or authorize Verte GA to pay) to the Postpetition Lender any fees arising under any master services agreements ("MSA") received by Verte GA from any third parties entering into short term MSA's to store their goods at the Leased Property within five (5) days of Verte GA's receipt of the same and such payments shall be applied to reduce the principal balance of the Note. The Borrower acknowledges and confirms that notwithstanding the Maturity Date, the Stated Principal Amount due under the Note, together with all accrued interest, charges and legal fees shall become immediately due and payable to the Postpetition Lender upon the sale of (i) the VPersonalty and (ii) the VLLC Interests. | |
| (h) | **Events of Default**: An "Event of Default" under the Note, includes, without limitation, (i) Borrower's breach of any obligations thereunder, (ii) failure of Borrower to gain authority and approval of Postpetition Financing or Settlement Agreement by March 10, 2023, (iii) failure of the Borrower or Verte GA to obtain insurance at reasonable rates, (iv) an order shall be entered reversing, adversely amending, adversely supplementing, staying, | |

142934977.7

| Summary of Material Terms | | Location |
|---|---|---|
| | vacating, or otherwise adversely modifying any material provision of the Order without the written consent of the Postpetition Lender, and (v) failure of any broker employed by the Trustee to sell the VLLC Interests or VPersonalty (each a "Sale Event"). | |
| (i) | **Carve-Out**. $75,000 to be paid from the proceeds of any Collateral to fund operational costs and any other chapter 7 administrative expenses incurred during the pendency of the Chapter 7 Case, including the Trustee's commission under 11 U.S.C. § 326, but only in the event the Estate does not realize any proceeds from a Sale Event. If a Sale Event occurs but does not produce net proceeds in excess of $75,000, the Postpetition Lender shall be obligated to fund the difference between $75,000 and the net proceeds from such Sale Event. | |

20. Pursuant to Bankruptcy Rule 4001 and Local Rule 4001-2, motions seeking authority to obtain financing must (i) disclose the presence and location of certain provisions contained in the documentation evidencing the financing; and (ii) justify the inclusion of such provisions. Set forth below are the disclosures required in accordance with such rules:

    a.    **Local Rule 4001-2(a)(i)(A) requires a debtor to disclose the amount of credit the debtor seeks to obtain under the proposed loan agreement, including the committed amount of the proposed loan agreement and the amount of new funding that will actually be available for borrowing by the debtor.**

        Paragraph 2(b) of the Proposed Order provides that the Postpetition Financing will allow up to $1,600,000, inclusive of the Postpetition Loans, in new funding that will be available for the Debtor to borrow.

    b.    **Local Rule 4001-2(a)(i)(E) requires a debtor to disclose the material conditions to closing and borrowing, including budget provisions.**

7

142934977.7

      Paragraph 4(g) of the Proposed Order requires that the Motion be approved on or before March 10, 2023. Additionally, Paragraph 2(c) of the Proposed Order authorizes the Trustee to use the Postpetition Financing in accordance with the Approved Budget, attached hereto as Exhibit B and attached to the Proposed Order as Exhibit 2.

  c.    **Local Rule 4001-2(a)(i)(F) requires a debtor to disclose any carve-outs from liens or superpriority claims, including the material terms of any professional fee carve-out.**

      Paragraph 5 of the Proposed Order grants the Postpetition Lender a valid, binding, continuing, enforceable, fully perfected superpriority security interest in and lien upon all Collateral and Postpetition Collateral, which shall have priority over all other existing secured claims including, without limitation, and with the consent of the AJ Group Creditors, the 547 Defense Loans.

      Paragraph 4(h) of the Proposed Order provides for $75,000 to be paid from the proceeds of any Collateral to fund operational costs and any other chapter 7 administrative expenses incurred during the pendency of the Chapter 7 Case, including the Trustee's commission under 11 U.S.C. § 326, but only in the event the Estate does not realize any proceeds from a Sale Event. If a Sale Event occurs but does not produce net proceeds in excess of $75,000, the Postpetition Lender shall be obligated to fund the difference between $75,000 and the net proceeds from such Sale Event.

      Additionally, Paragraph 4(a) of the Agreement provides for a carve-out from net sale proceeds of the Collateral in an aggregate amount not to exceed a maximum of $1,500,000 for the benefit of the Estate (i.e. the Estate Share), with an allocation of such proceeds to be split 75/25, with the Estate retaining 25% (and the amounts retained by the estate shall be utilized in the calculation of the Estate Share) and the AJ Group Creditors retaining 75%.

  d.    **Local Rule 4001-2(a)(i)(H) requires a debtor to disclose any provision that establishes sale or plan milestones.**

      Paragraph 5(a) of the Agreement requires a sale of the Collateral to occur on or before May 31, 2023 (i.e., the Maturity Date of the Postpetition Financing).

  e.    **Local Rule 4001-2(a)(i)(M) requires a debtor to disclose any termination or default provisions concerning the availability of credit.**

      Paragraph 4(e) of the Proposed Order provides for Events of Default (as defined therein). See Summary of Terms, Paragraph (e), above.

    f.    **Local Rule 4001-2(a)(i)(Q) requires a debtor to disclose provisions or findings of fact that (i) bind the estate or other parties in interest with respect to the validity, perfection or amount of the secured creditor's prepetition lien or the waiver of claims against the secured creditor without first giving parties in interest, including, but not limited to, any official committee appointed in these cases, at least seventy-five (75) days from the entry of the initial interim order to investigate such matters or (ii) limit the Court's ability to grant relief in the event of a successful challenge.**

        Paragraph 3(a)(i) and (ii) of the Agreement fix and allow the Postpetition Lender's prepetition secured claim (i.e., the 547 Defense Claim) as set forth therein. The fixing of the 547 Defense Claim reflects a reduction of nearly $6.5 million of the amounts advanced under the 547 Defense Loans. This significant reduction reflects the risks for both the Trustee and the Postpetition Lender associated with litigating the perfection of the 547 Defense Loans and represents a more than reasonable compromise, particularly given the extremely meaningful value the Postpetition Lender is providing through the Postpetition Financing and the Agreement. The inclusion of this provision is therefore justified under the circumstances.

    g.    **Local Rule 4001-2(a)(i)(R) requires a debtor to disclose provisions that immediately approve all terms and conditions of the underlying loan agreement (provided that provisions in the order that provide that the debtor is authorized to enter into and be bound by the terms and conditions of such loan agreement do not need to be summarized).**

        Paragraphs 1 and 2 of the Agreement have the effect of immediate approval of all terms and conditions of the Postpetition Financing. Inclusion of these provisions are justified because, without immediate access to the Postpetition Financing, the Debtor's most valuable assets would be at serious risk of the loss of value. For example, failure to timely pay ongoing lease-related expenses (rent, utilities, security, etc.) could result in contractual defaults and/or loss of valuable estate property, thereby jeopardizing a robust marketing process and ultimate sale of such property for the benefit of unsecured creditors.

    h.    **Local Rules 4001-2(a)(i)(V) and (W) requires a debtor to disclose (i) provisions that immediately waive the debtor's rights under section 506(c) of the Bankruptcy Code; and (ii) provisions that immediately seek to affect the Court's power to consider the equities of the case doctrine under section 552(b)(1) of the Bankruptcy Code, respectively.**

        Paragraph 8 of the Proposed Order provides that the Trustee, on behalf of the Estate, shall be deemed to have waived and will not assign or permit any

9

other party to assert any claim under section 506(c) or 552(b) of the Bankruptcy Code for any costs and expenses incurred in connection with the preservation, protection, enhancement of, or realization by the Postpetition Lender upon the Postpetition Collateral. The Postpetition Lender demanded inclusion of these provisions in exchange for the (i) extremely valuable Postpetition Financing to preserve the Debtor's most valuable assets, (ii) the carveout of an Estate Share of up to $1,500,000 for the benefit of unsecured creditors, with the first $350,000 of net sale proceeds of the Collateral allocable to the Estate Share, (iii) a reaffirmation of the agreement to have the technology business sale proceeds realized during the Delaware receivership action to be made available to pay unsecured creditors, (iii) and a favorable 75%/25% split of Collateral proceeds allocable to the Estate Share up to such cap. The consideration provided by the Postpetition Lender is therefore more than reasonable in exchange for inclusion of these often-approved provisions.

## SALIENT TERMS OF AGREEMENT

21. A summary of the pertinent terms of the Agreement are as follows:[5]

    a. **AJ Group Secured Claim.**  AJ Group Creditors shall have allowed claims as follows (collectively, the "AJ Group Secured Claim"):

        i. allowed secured first-super priority claim in the aggregate amount of up to $1,600,000 (collectively, the "DIP Loan Claim"), secured by a blanket lien on all of the Collateral under Section 364(d), which amount is equal to the maximum amount of post-petition advances to be made by the AJ Group Creditors to the Debtor under the DIP Promissory Note (the "DIP Loans"). Such advances shall be used in accordance with the Approved Budget.

        ii. allowed pre-petition secured claim in the amount of $12,500,000 (the "547 Defense Claim"), secured by a blanket lien on all of the Collateral, which amount represents the compromise of the claim to reduce the same from the aggregate of $18,957,819 advanced by the AJ Group Creditors to the Debtor after UCC-1's were filed on January 27, 2022 (collectively, the "547 Defense Loans").

        iii. allowed unsecured claim in the aggregate principal amount of $37,212,020 (the "Credit Agreement Claim").

---

[5] To the extent there is any inconsistency between the summary of settlement terms herein and the settlement language contained in the Agreement, the terms of the Agreement control.

10

142934977.7

      iv.    allowed unsecured claims in the aggregate amount of $49,250,731 (the "<u>Unsecured Creditor Loan Claim</u>").

b. **Estate Share and General Unsecured Claims Pool.** For the benefit of the Debtor's estate, the AJ Group Creditors have agreed to carve out from net sale proceeds received from the disposition of Collateral, including without limitation, the VLLC Interests, the VPersonalty, and the FLLC Interests, in an aggregate amount not to exceed a maximum of $1,500,000 (collectively the "<u>Estate Share</u>"), irrespective of the source. The liquidation of all other Collateral including any accounts receivable or refunds or causes of action (but excluding all Chapter 5 recoveries and commercial tort claims) shall be split 75/25 with the estate retaining 25% and the amounts retained by the estate shall be utilized in the calculation of the Estate Share.

c. **Application of Net Sale Proceeds.** The VLLC Interests (including any separate transfer of Verte GA's interest under the lease for the Leased Property) and the VPersonalty shall be marketed together in bulk. Any net cash proceeds received therefrom (i.e., after first satisfying the the DIP Loan Claim) on account of the disposition of the VLLC Interests and VPersonalty, via auction sale to be conducted by Newmark Southern Region, LLC, a Georgia limited liability company d/b/a Newmark ("<u>Newmark</u>") or the Trustee on or before May 31, 2023, shall be allocated and paid as follows: (1) subject to the No Sale Provision below, the first $350,000 of aggregate net cash proceeds paid by any successful buyer(s) shall be retained by the Debtor's estate and become part of the Estate Share; and (2) all net cash proceeds thereafter paid by any successful buyer(s) shall be allocated and paid 25% to the Debtor's estate (which sum shall become part of the Estate Share) and 75% to the Collateral Agent (for distribution first, to pay any remaining unpaid secured claim amounts; and second, in accordance with the waterfall provisions of the Intercreditor Agreement); *provided, however*, that in no event shall the aggregate sum of all amounts allocated and paid to the Debtor's estate hereunder and otherwise on account of the Carve Out exceed the maximum amount of $1,500,000, *in toto*. If no party (including the AJ Group Creditor) makes a bid for the VLLC Interests (and/or the lease for the Leased Property) then the Trustee shall promptly engage an auctioneer who shall liquidate the VPersonalty and the net proceeds realized therefrom shall be allocated 50% to the estate and 50% to the AJ Group Creditors (and the estate's allocation shall be utilized in the calculation of the Estate Share, hereinafter "<u>No Sale Provision</u>").

d. **Settlement Releases.** In consideration of (i) the Estate Share payable to and for the benefit of the Debtor's estate, (ii) the waiver of distribution from the proceeds of the sale of the Technology Business arising from the Chancery Sale Order, (iii) the reduction of the 547 Defense Claim, and (iv) the Post-Petition Loans and DIP Loans made to and for the benefit of the

11

Debtor and its estate, and upon entry of a final order of the Bankruptcy Court approving the terms and provisions of this Agreement (which approval order must be in a form reasonably acceptable to the Trustee, JA Logistics Holdings LLC, and the AJ Group Creditors, and must be entered on or before March 17, 2023, failing which this Agreement shall be deemed null and void unless extended by mutual agreement of the Trustee, JA Logistics Holdings LLC, and the AJ Group Creditors then, the Trustee on behalf of himself, the Debtor, its estate, and all of its creditors shall be deemed to have fully released, remised and forever discharged the AJ Group Creditors, JA Logistics Holdings LLC, Tech Holdings, and all of their respective officers, directors, managers, shareholders, employees, subsidiaries, affiliates, successors, and assigns, including Jane Gol, Amir Chaluts, and Sara Rubenstein, of and from any and all claims, demands, obligations, suits, judgments, damages, losses, rights, remedies, charges, costs, debts and causes of action whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereafter arising at law or in equity under any theory of law or statute, based in whole or in part upon any act, omission, transaction, event or other occurrence taking place prior to the execution of this Agreement, which any relate to the Debtor, the proceeding before the Chancery Court or the business operations of the Debtor and its subsidiaries and affiliates from the beginning of the world through the date of a Bankruptcy Court order approving the terms set forth in this Agreement, and including without limitation, any claims under Section 547 or 548 of the Bankruptcy Code or under the Uniform Voidable Transactions Act and any and all claims arising from or related to the sale of the Technology Business.

## BASIS FOR RELIEF REQUESTED

22. Approval of both the Postpetition Financing and the Agreement will provide the Trustee with immediate access to funds needed to pay their current and future expenses, including post-petition rent, wages, and utilities, while preparing for a sale of their remaining assets. If these obligations are not satisfied, the Debtor may lose the ability to monetize its assets, particularly with respect to the lease of the Leased Property, which would result in irreparable harm and likewise jeopardize the Debtor's ability to maximize the value of the VPersonalty through a robust sale process.

142934977.7

### A. Incurrence of Senior-Secured Superpriority Debt Under Bankruptcy Code Section 364(d)

23. Section 364(d)(1) provides that the court may, after notice and a hearing:

> authorize the obtaining of credit or the incurring of debt secured by a senior or equal lien on property of the estate that is subject to a lien only if-
>
> (A) the trustee is unable to obtain credit otherwise; and
>
> (B) there is adequate protection of the interest of the holder of the lien on the property of the estate on which such senior or equal lien is proposed to be granted.

11 U.S.C. 364(d)(1).

24. A debtor need only demonstrate "by a good faith effort that credit was not available" without the protections afforded to potential lenders by section 364(d). See In re Mosello, 195 B.R. 277, 289 (Bankr. S.D.N.Y. 1996) (citing In re Snowshoe Co., 789 F.2d 1085, 1088 (4th Cir. 1986)). Thus, "[t]he statute imposes no duty to seek credit from every possible [lebder] before concluding that such credit is unavailable." Ames, 115 B.R. at 40 (holding that debtor made reasonable effort to secure financing when it selected the least onerous financing option from the remaining two lenders). Moreover, where few lenders likely can or will extend the necessary credit to a debtor, "it would be unrealistic and unnecessary to require [the debtor] to conduct an exhaustive search for financing." In re Sky Valley, Inc., 100 B.R. 107, 113 (Bankr. N.D. Ga. 1988), aff'd sub nom., Anchor Savings Bank FSB v. Sky Valley, Inc., 99 B.R. 117, 120 n.4 (N.D. Ga. 1989).

25. Here, the Debtors selected the Postpetition Financing provided by the AJ Group Creditors only after considering other available options under the circumstances. In the end, it was not practically feasible (and likely not possible given the lack of equity in the Collateral to borrow against) for the Trustee to obtain a loan on equal or better terms that afforded the Trustee sufficient and quick liquidity to preserve value for the benefit of unsecured creditors. In addition, the Trustee

is unaware of other financing opportunities on an unsecured basis. Thus, the AJ Group Creditors provided the only viable source of funding. All negotiations were conducted in good faith and at arm's length and the AJ Group Creditors would not otherwise agree to lend without the protections being afforded it under the terms set forth in the Proposed Order and the Approved Budget.

26. After considering his financing options, and whether other more advantageous financing alternatives would be available to the Trustee under the circumstances, the Trustee exercised his sound business judgment and accepted the Postpetition Financing with the AJ Group Creditors. The Postpetition Financing provides significant advantages and favorable terms that the Trustee believes would be unavailable through other lenders, especially when considered globally with the Agreement. Further, the Trustee notes that there is no priming of other third-party, senior liens, nor will junior liens on the Collateral (if any) be affected by the Postpetition Financing.

### B.    Approval of Settlements Under bankruptcy Rule 9019.

27. Bankruptcy Rule 9019 provides that "[o]n motion by the [T]rustee and after notice and a hearing, the court may approve a compromise or settlement.  Notice shall be given to creditors, the United States trustee, the debtor. . . and to any other entity as the court may direct." Fed. R. Bankr. P. 9019(a); see also Myers v. Martin (In re Martin), 91 F.3d 389, 393 (3d Cir. 1996).

28. The Trustee is obligated to maximize the value of the estate and make her decisions in the best interests of all creditors.  See Martin, 91 F.3d at 394.  Indeed, courts generally defer to a trustee's business judgment when there is a legitimate business justification for a trustee's decision.  See Martin, 91 F.3d at 395.

29. In determining whether a settlement should be approved under Bankruptcy Rule 9019, the Court must "assess and balance the value of the claim that is being compromised against the value to the estate of the acceptance of the compromise proposal." Id. at 393.  To this end,

courts should consider four factors: "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." Id. (citation omitted).

30. This Court should approve the Agreement because it is supported by sound business justifications, the terms of the Agreement are more than reasonable, and the four (4) Martin factors weigh in favor of approval.

31. The crux of the dispute is whether, under Chapter 5 of the Bankruptcy Code, the Trustee may avoid AJ Group Creditors' purported prepetition lien securing $18,957,819 advanced to the Debtor after UCC-1's were filed on January 27, 2022 (including amounts advanced during the Debtor' pre-petition Delaware receivership action for the benefit of that estate and which resulted in net proceeds available to creditors other than the AJ Group Creditors in excess of one million dollars ) . Both the Trustee and the AJ Group Creditors have asserted reasonable arguments in support of their positions, though it appears that the AJ Group Creditors may have the stronger position under applicable case law. The proposed compromise of the 547 Defense Loans to a final allowed secured claim in the amount of $12,500,000 represents a reduction of nearly $6,500,000 from the amounts advanced. Considering the complexity of the litigation involved, and the expense, inconvenience and delay attending it, the Trustee believes this a very favorable resolution for the Debtor's estate. This is especially true given the global nature of the Agreement, which includes (i) extremely valuable Postpetition Financing to preserve the Debtor's most valuable assets (ii) the carveout of an Estate Share of up to $1,500,000 for the benefit of unsecured creditors and a reaffirmation of the AJ Group Creditor's agreement to have the technology business sale proceeds realized during the Delaware receivership action to be made available to pay unsecured

creditors, (iii) and a favorable 75%/25% split of Collateral proceeds allocable to the Estate Share up to such cap. The Agreement should therefore be approved.

### C. Waiver of Bankruptcy Rules 6004(a) and (h)

32. To implement the foregoing successfully, the Trustee seek a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the fourteen-day stay of an order authorizing the use, sale or lease of property under Bankruptcy Rule 6004(h). As set forth above, the Postpetition Financing is essential to allow the Trustee to preserve the Debtor's assets while pursuing a sale.

### NOTICE

33. Notice of this Motion will be provided to: (i) the Office of the United States Trustee for the District of Delaware, (ii) counsel for the Debtor, (iii) the Debtor's primary prepetition lenders, the AJ Group Creditors and TNJ Holdings Inc., or their respective counsel; (iv) counsel for the landlord for the Leased Property; (v) counsel for Geekplus America Inc. and (vi) all parties who have filed proofs of claim as of the date of this Motion. The Trustee submits that no further notice is required and requests that the Court determine such notice is adequate and proper.

*[Remainder of page left intentionally blank]*

142934977.7

**CONCLUSION**

WHEREFORE, based upon the foregoing, the Debtors request entry of an Order (i) authorizing the Trustee to obtain senior-secured, superpriority post-petition financing pursuant to the terms and agreements set forth in the Proposed Order and Approved Budget; (ii) approving the Agreement, and (iii) granting related relief.

Respectfully submitted,

**FOX ROTHSCHILD LLP**

By: /s/ Seth A. Niederman
Seth A. Niederman, Esquire
Delaware Bar No. 4588
919 North Market Street, Suite 300
P.O. Box 2323
Wilmington, DE 19899-2323
Phone (302) 654-7444/Fax (302) 656-8920
sniederman@foxrothschild.com

-and-

Michael G. Menkowitz, Esquire
Jesse M. Harris, Esquire
2000 Market Street, 20th Floor
Philadelphia, PA 19103-3222
Phone (215) 299-2000/Fax (215) 299-2150
mmenkowitz@foxrothschild.com
jesseharris@foxrothschild.com

Dated: February 28, 2023

*Proposed Counsel for Alfred T. Giuliano, Chapter 7 Trustee for the estate of Project Verte Inc.*

142934977.7