## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 7 |
| PROJECT VERTE INC., | Case No. 23-10101 (LSS) |
| Debtor. | **Re: Docket No. 35** |

**PRELIMINARY OBJECTION OF JOSSEF KAHLON AND TNJ HOLDINGS, INC. TO CHAPTER 7 TRUSTEE'S MOTION FOR ORDER (A) AUTHORIZING THE TRUSTEE TO OBTAIN POSTPETITION FINANCING AND TO GRANT SUPERPRIORITY LIENS PURSUANT TO 11 U.S.C. §§ 105(a) AND 364(d); AND (B) APPROVING SETTLEMENT AGREEMENT BY AND AMONG THE CHAPTER 7 TRUSTEE AND AJ GROUP CREDITORS PURSUANT TO RULE 9019**

Jossef Kahlon ("Kahlon") and TNJ Holdings Inc. ("TNJ"), a co-founder, shareholder and a primary prepetition lender of Project Verte, Inc. (the "Debtor"), hereby submit this preliminary objection to the *Chapter 7 Trustee's Motion for Order (A) Authorizing the Trustee to Obtain Postpetition Financing and to Grant Superpriority Liens Pursuant to 11 U.S.C. §§ 105(a) and 364(d); and (B) Approving Settlement Agreement by and Among the Chapter 7 Trustee and AJ Group Creditors Pursuant to Rule 9019* (Dkt. No. 35) (the "Motion").

### PRELIMINARY OBJECTION[1]

1.      TNJ is one of the Debtor's shareholders and prepetition lenders, who has been involved in a long-running dispute with the Debtor's other shareholders concerning the governance and control of the Debtor.  TNJ and its owner Kahlon recently received notice of the Motion, by which the Trustee seeks approval of DIP financing to be provided by, and a "settlement agreement" with, the so-called "AJ Group Creditors," who are in fact ***the same shareholders who improperly wrested control of the Debtor from TNJ*** and acquired the Debtor's Technology Business pursuant

---

[1]      Capitalized terms used but not otherwise defined herein have the meaning ascribed to them in the Motion.

to the Chancery Court's Sale Order.[2]  While the Trustee has designated the hearing scheduled for

March 7, 2023, as an "interim" hearing, Kahlon and TNJ are compelled to call the Court's attention

to some of the Motion's most glaring deficiencies, which warrant its immediate denial.

2.        While the Trustee disingenuously attempts to portray the proposed DIP loan and

settlement agreement as arm's-length transactions, he does not (and cannot) refute the fact that

these are highly suspect insider transactions with the Debtor's shareholders.  Nor has the Trustee

provided **any evidence** showing that those agreements are in the best interests of the Debtor's

creditors or that they satisfy the strict scrutiny applied to insider transactions.  *See In re Drexel*

*Burnham Lambert Grp.*, 134 B.R. 493, 498 (Bankr. S.D.N.Y. 1996) ("We subjected the agreement

to closer scrutiny because it was negotiated with an insider, and hold that closer scrutiny of insider

agreements should be added to the cook book list of factors that Courts use to determine whether

a settlement is fair and reasonable.").

3.        Conspicuously missing from the Motion is any description of, or justification for,

the broad releases that the Trustee seeks to grant the AJ Group Creditors—*as well as their*

*directors, managers, shareholders and numerous other third parties who are providing no*

*consideration in exchange for those releases*—before completing an investigation of all potential

claims against those parties.  Approval of the releases at this time would ensure that no such

investigation is ever conducted, and would strip the Debtor's creditors, including Kahlon and TNJ,

of the right to bring derivative claims on behalf of the Debtor's estate in the future.  This is

especially jarring given the fact that the Trustee has yet to file the Debtor's schedules and statement

of financial affairs, purportedly because of the "substantial amount of information" the Trustee

---

[2]        *See* Corporate Ownership Statement [Dkt. No. 2]; Supplemental Consent Order Approving the Sale of Project Verte's Technology Assets to J&A Tech Holdings LLC, *In re Project Verte, Inc.*, C.A. No. 2022-0696-MTZ (Del. Ch. Jan. 20, 2023).

needs to process regarding "the Debtor's assets, liabilities, business operations, contracts, and debts."[3] It strains credulity to suggest that the Trustee is in possession of the necessary information to have thoroughly investigated possible claims against insiders while not having the basic information to file schedules concerning the Debtor's assets and liabilities.

4.      The Motion does not satisfy the standard for approving debtor releases, which requires, among other things, "substantial contribution" by the releasee and support by a "substantial majority of creditors." *In re Zenith Elecs. Corp.*, 241 B.R. 92, 110 (Bankr. D. Del 1999); *See also* Hr'g Tr. 13:16-13:23, *In re Performance Powersport*, Case No. 23-10047 (LSS) (Bankr. D. Del Feb. 23, 2023) (rejecting releases included in a DIP loan agreement, noting that "I don't think [the debtors] have met the release standard for third parties or debtor releases which is the *Zenith* standard for debtor releases."). Incredibly, the Trustee asks the Court to find that, "[b]ased on the record before this Court," the settlement agreement and the releases are "supported by facts of the case, are warranted in light of the substantial risks associated with any potential litigation, represent fair and adequate consideration in light of all of the circumstances and is supported by sound business justifications." Proposed Order [Dkt. No. 35, Ex. A] ¶ H. However, the Trustee has provided zero evidence for a "record" before this Court and no legal basis to approve the requested releases.

5.      It is no accident that the Trustee seeks final approval of the Motion on March 22, 2023—a full week before the repeatedly extended deadline for filing the schedules and SOFAs—as those basic disclosures will likely show that this Chapter 7 Case is a two-party dispute between TNJ and the AJ Group Creditors. Evidence will show that this Chapter 7 Case is the latest proceeding in a series of litigations between the Debtor's prepetition lenders and shareholders

---

[3]      *See* Motion for Order Extending Time to File Schedules of Assets and Liabilities and Statements of Financial Affairs [Dkt. No. 13].

arising from the AJ Group Creditors' efforts to obtain control of the Debtor's business and assets without respecting the rights of TNJ, the only non-insider lender and shareholder of the Debtor. The Motion seeks to extinguish TNJ's ability to pursue claims against the AJ Group Creditors for prepetition unlawful actions that injured both the Debtor and TNJ, while attempting to use the "settlement" as a means to (i) eliminate the possibility of any recovery for TNJ in this case and (ii) preserve purported claims against TNJ (and its principals) and provide funding to the Trustee to pursue them.  *See* Motion ¶ 21(d); Settlement Agreement [Dkt. No. 35, Ex. C] ¶ 4(b).  Put simply, the AJ Group Creditors seek to weaponize the Chapter 7 Case against TNJ, eviscerate TNJ's rights as a creditor, and create a platform for more litigation to harass TNJ.  This Court's jurisdiction should not be used for these purposes.  *See In re 15375 Mem'l Corp.*, 589 F.3d 605, 625 (3d Cir. 2009) (if the "primary, if not sole, purpose of [a bankruptcy filing] was a litigation tactic, the petition may be dismissed as not being filed in good faith.").

6.      Accordingly, while the Motion does not explain what kind of "interim" relief the Trustee seeks with respect to the settlement, it cannot be approved without a full evidentiary hearing, and after the opportunity for discovery, to fully vet the analysis behind and propriety of the releases being given by the Debtor's estate on shortened notice and without the filing of schedules and financial statements.

7.      The proposed DIP loan is equally improper.  It purports to provide up to $1.6 million of financing based upon a budget that is in turn based upon estimates of expenses relating to the operations of Verte GA, *a non-debtor affiliate*, whose only asset is a purported "below market" lease.  Indeed, the Motion indicates that the AJ Group Creditors have provided direct, post-petition financing of $400,000 to Verte GA since the Petition Date.  Motion ¶ 13.  There is no explanation as to why this financing could not continue on a direct basis to Verte GA, rather than indirectly

through a convoluted DIP financing of the Debtor that is designed to obtain releases for the DIP

lenders and related parties.  Moreover, the Debtor has a pending turnover motion—which the

Trustee fails to mention in the Motion—seeking to have the Receiver transfer $1.1 million in cash

in its custody to the estate.[4]  These funds should be more than sufficient to fund the actual financial

needs of the Debtor (as opposed to its non-debtor affiliate).  The DIP loan is therefore unnecessary.

*See* 11 U.S.C. § Section 364(d) (priming DIP allowed only if "the trustee is unable to obtain such

credit otherwise").

8.       Nor should the Court make the numerous factual findings for which the Trustee has

provided *no* evidentiary support, even on an interim basis.  For example, the Trustee asks this

Court to find that the Debtor is unable to obtain unsecured credit allowable under section 503(b)(1)

of the Bankruptcy Code and that financing on a postpetition basis is not otherwise available

pursuant to section 364(c) of the Bankruptcy Code.  *See* Proposed Order [Dkt. No 35, Ex. A] ¶ E.

Furthermore, the Trustee concedes that TNJ is the only other "primary lender,"[5] yet the Trustee

never approached TNJ about financing, nor is there any indication that the Trustee sought

financing from any other source.  Similarly, the Proposed Order provides that "the Borrower shall

pay . . . fees arising under any master services agreements received by Verte GA from any third

party" yet the Trustee nowhere explains what any master services agreement involves.  *See*

Proposed Order [Dkt. No. 35, Ex. A] ¶ 4(f).  The Trustee also requests the Court to find, without

providing a shred of evidence, that (i) the DIP financing "has been negotiated in good faith and at

arms length" and therefore the DIP Lenders are entitled to the "good faith" protection of section

---

[4]       *See* Motion for Entry of an Order Directing Turnover of Estate Property [Dkt. No. 30].  Kahlon and TNJ
reserve all rights with respect to the turnover motion and the propriety of the commencement of the Chapter 7 Case.
The Chancery Court rejected a prior effort to obtain releases in the receivership case for the AJ Group Creditors and
it appears this Chapter 7 Case is no more than a second bite at the apple to funnel receivership proceeds to this court
and obtain releases.
[5]       *See* Settlement Agreement (Dkt. No. 35, Ex. C) ¶F.

364(e), *see id.* at ¶ G; and (ii) the DIP financing "reflects the Trustee's exercise of prudent business judgment consistent with his fiduciary duties and are supported by reasonably equivalent value and fair consideration", *see id.* at ¶ H.  The Court should not rubberstamp the Trustee's improper attempt to create an illusory record where none exists in an effort to obtain expedited and unwarranted releases.

## **RESERVATION OF RIGHTS**

In light of the foregoing, the Court should deny the Motion.  If the Court is inclined to allow the Trustee to seek final approval of the Motion at a later date, Kahlon and TNJ reserve their right to supplement this Preliminary Objection following discovery.

## CONCLUSION

**WHEREFORE**, Kahlon and TNJ respectfully request that the Court (i) deny the relief

requested in the Motion and (ii) provide Kahlon and TNJ such other and further relief as the Court

may deem necessary and appropriate.

Dated: March 7, 2023
     Wilmington, Delaware

/s/ *Amanda R. Steele*

Amanda R. Steele (No. 5530)
David T. Queroli (No. 6318)
**RICHARDS, LAYTON & FINGER, P.A.**
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telephone:  (302) 651-7700
Facsimile:  (302) 651-7701
Email: steele@rlf.com
     queroli@rlf.com

-and-

Michael Paul Bowen (*pro hac vice* forthcoming)
Kurt A. Mayr (*pro hac vice* forthcoming)
Shai Schmidt (*pro hac vice* forthcoming)
Margaret J. Lovric (*pro hac vice* forthcoming)
**GLENN AGRE BERGMAN & FUENTES LLP**
1185 Avenue of the Americas
22nd Floor
New York, New York 10036
Telephone: (212) 970-1600
Email: mbowen@glennagre.com
     kmayr@glennagre.com
     sschmidt@glennagre.com
     mlovric@glennagre.com

*Counsel to Jossef Kahlon and TNJ Holdings Inc.*