IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>PROJECT VERTE INC.,<br><br>        Debtor. | Chapter 7<br><br>Case No. 23-10101(LSS)<br><br>**Re D.N. 35, 36, 39, & 49** |

**FINAL ORDER (A) AUTHORIZING THE TRUSTEE TO OBTAIN POSTPETITION FINANCING AND TO GRANT SUPERPRIORITY LIENS PURSUANT TO 11 U.S.C. § § 105(A) AND 364(D); AND (B) APPROVING SETTLEMENT AGREEMENT BY AND AMONG THE CHAPTER 7 TRUSTEE AND AJ GROUP CREDITORS PURSUANT TO BANKRUPTCY RULE 9019**

Upon the motion (the "Motion") of Alfred T. Giuliano (the "Trustee"),[1] the Chapter 7 trustee for the estate (the "Estate") of Project Verte Inc. (the "Debtor"), seeking entry of an Order, pursuant to Sections 105(a) and 364(d) of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq*. (the "Bankruptcy Code"), Rules 4001 and 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 4001-2 and 9013-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules") (i) authorizing the Trustee on behalf of the Estate to obtain postpetition financing in an aggregate maximum principal amount of $1,600,000 (the "Postpetition Financing") on a senior-secured, superpriority basis pursuant to the terms and conditions herein, together with any additional agreements, documents, instruments and certificates executed, or otherwise delivered in connection therewith by the Trustee on behalf of the Estate (collectively, the "Postpetition Documents"), as borrower, and the AJ Group Creditors, as lender (the "Postpetition Lender"), and (ii) approving the *Settlement Agreement* by and among the Trustee and the AJ Group Creditors (the

---

[1] Unless otherwise indicated herein, all capitalized terms used but not defined herein shall have the meaning given to such term in the Motion.

143059632.12

"Agreement"), a copy of which is annexed hereto as **Exhibit 1**; and due and appropriate notice of the Motion being adequate and appropriate under the particular circumstances, the relief requested therein and a final hearing (the "Final Hearing") on the Motion having been held before this Court; and upon the entire record made at the Final Hearing; and this Court having found good and sufficient cause appearing therefor;

IT IS HEREBY FOUND:

A. On January 26, 2023 (the "Petition Date"), the Debtor filed a voluntary petition for relief with this Court under chapter 7 of the Bankruptcy Code commencing the chapter 7 case, Case No. 23-10101 (the "Chapter 7 Case") in the United States Bankruptcy Court for the District of Delaware (this "Court").

B. On or about January 27, 2023, the Trustee was appointed as the chapter 7 trustee.

C. This Court has jurisdiction over the Chapter 7 Case and the Motion pursuant to 28 U.S.C. §§ 157(b) and 1334. Consideration of the Motion constitutes a core proceeding as defined in 28 U.S.C. § 157(b)(2). Venue for the Chapter 7 Case and this Motion is proper under 28 U.S.C. §§ 1408 and 1409.

D. The Trustee requires access to postpetition financing in an amount necessary to fund the reasonable and necessary expenses ("Expenses") incurred (including all salaries of necessary employees) by Verte GA to maintain the value of the VLLC Interests and the VPersonalty.

E. The Trustee is unable to obtain unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense. Under the circumstances, financing on a postpetition basis is also not otherwise available pursuant to section 364(c) of the Bankruptcy Code.

143059632.12

F.    The Postpetition Lender will commit to providing Postpetition Financing through May 31, 2023 (subject to early termination rights set forth below) in an amount necessary to fund the Expenses incurred by Verte GA to maintain the value of the VLLC Interests and the VPersonalty, in an amount not to exceed $1,600,000 (the "Stated Principal Amount"), upon the terms and conditions set forth herein.

G.    Based on the record before this Court, the Postpetition Financing has been negotiated in good faith and at arm's length between the Trustee and the Postpetition Lender and any credit extended and loans made to the Estate by the Postpetition Lender pursuant to this Final Order and the Postpetition Documents (the "Postpetition Obligations") shall be deemed to have been extended, issued or made, as the case may be, in good faith within the meaning of, section 364(e) of the Bankruptcy Code and the Postpetition Lender shall have all of the protections thereunder regarding the Postpetition Financing.

H.    Based on the record before this Court, it appears that the terms of this Final Order, including, without limitation, the terms of the Postpetition Financing as set forth herein, are fair and reasonable under the circumstances, reflect the Trustee's exercise of prudent business judgment consistent with his fiduciary duties, and are supported by reasonably equivalent value and fair consideration. The Agreement has been entered into in good faith and is the result of arms' length negotiations and the compromise of claims set forth in the Agreement are supported by facts of the case, are warranted in light of the substantial risks associated with any potential litigation, represent fair and adequate consideration in light of all the circumstances and is supported by sound business justifications

I.    The Trustee has requested immediate entry of this Final Order. The permission granted herein to obtain funds under the Postpetition Financing is necessary to avoid immediate

3

143059632.12

and irreparable harm to the Estate. This Court concludes that entry of this Final Order is in the best interests of the Estate, its creditors, and other parties in interest.

Based upon the foregoing findings and conclusions, and upon the record made before this Court at the Final Hearing, and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED, DETERMINED AND DECREED** that:

1. <u>Motion Granted</u>. The Motion is granted on a final basis on the terms and conditions set forth herein, with the foregoing findings incorporated herein by reference. Any objections to the Motion that have not previously been withdrawn or resolved are hereby overruled. This Final Order shall be valid and binding on all parties-in-interest and fully effective immediately upon entry.

2. <u>Authorizations.</u>

    a. The Trustee, on behalf of the Estate, is hereby authorized to execute and enter into the Postpetition Documents, if any, in accordance with the terms of this Final Order. The Postpetition Documents and this Final Order shall govern the financial and credit accommodations to be provided to the Estate by the Postpetition Lender as described herein; provided that, in the event of a conflict between the Motion, the Agreement, the Postpetition Documents, and this Final Order, this Final Order shall control.

    b. The Trustee, on behalf of the Estate, is hereby authorized to borrow money up to an aggregate principal amount of $1,600,000.

    c. The Postpetition Financing may be used in accordance with the terms of this Final Order to fund the Expenses, consistent with the Final Approved Budget (as defined below), annexed hereto as **Exhibit 2**.

143059632.12

d.  With respect to the Postpetition Obligations, no obligation, payment, transfer or grant of security under this Final Order shall be stayed, restrained, voidable, avoidable or recoverable under the Bankruptcy Code or under any applicable law (including without limitation, under sections 502(d), 548 or 549 of the Bankruptcy Code or under any applicable state Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act or similar statute or common law), or subject to any defense, reduction, setoff, recoupment or counterclaim, except as set forth herein.

e.  The Trustee is authorized to enter into and perform under the Agreement, all of the terms of which are approved in their entirety on aa final basis, including, without limitation, the releases contained in Section 7 therein, and the provisions providing for the sharing of any sale proceeds as between the Postpetition Lender and the Estate, all as more fully set forth in such Agreement; provided, however, that Paragraph 7 of the Agreement is hereby modified and replaced as follows:

> 7. **Settlement Releases.**  In consideration of (i) the Estate Share payable to and for the benefit of the Debtor's estate, (ii) the waiver of distribution from the proceeds of the sale of the Technology Business arising from the Chancery Sale Order, (iii) the reduction of the 547 Defense Claim, and (iv) the Post-Petition Loans and DIP Loans made to and for the benefit of the Debtor and its estate, and upon entry of a final order of the Bankruptcy Court approving the terms and provisions of this Agreement (which approval order must be in a form reasonably acceptable to the Trustee, JA Logistics Holdings LLC, and the AJ Group Creditors, and must be entered on or before March 29, 2023, failing which this Agreement shall be deemed null and void unless extended by mutual agreement of the Trustee, JA Logistics Holdings LLC, and the AJ Group Creditors) then, the Trustee on behalf of himself, the Debtor, its estate, and all of its creditors shall be deemed to have fully released, remised and forever discharged the AJ Group Creditors, JA Logistics Holdings LLC, Tech Holdings, and all of their respective officers, directors, managers, shareholders, employees, subsidiaries , affiliates , successors, and assigns, including Jane Gol, Amir Chaluts, and Sara Rubenstein, of and from any and all claims, demands, obligations, suits, judgments, damages, losses, rights, remedies, charges, costs, debts and causes of action whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereafter arising at law or in

        equity under any theory of law or statute, based in whole or in part upon any act, omission, transaction, event or other occurrence taking place prior to the execution of this Agreement, which relate to the Debtor, the proceeding before the Chancery Court or the business operations of the Debtor and its subsidiaries and affiliates from the beginning of the world through the date of a Bankruptcy Court order approving the terms set forth in this Agreement, and including without limitation, any claims under Section 547 or 548 of the Bankruptcy Code or under the Uniform Voidable Transactions Act and any and all claims arising from or related to the sale of the Technology Business. For the avoidance of doubt, (i) the Trustee's release on behalf of "all of [the Estate's] creditors" shall mean the release of all claims of all creditors of the Estate to the extent any such creditors would or could be asserting derivative claims against any one or more of the released parties, which claims include, without limitation, those grounded in alter ego, piercing the corporate veil, successor liability and/or breach of fiduciary duty (all of which claims are deemed released); and (ii) the releases contained in this Section 7 shall not apply to, and the Trustee and Debtor specifically preserves all claims against, TNJ, Jossef Kahlon, Julian Kahlon, and Graham Fortgang.

        f.        The Trustee and the AJ Group Creditors each are authorized to take all actions necessary to effectuate the relief granted pursuant to this Final Order in accordance with the terms of this Final Order and the Agreement.

        3.        <u>Borrowing</u>. Subject to this Final Order, the Postpetition Lender will provide the Postpetition Financing in accordance with the terms hereof, and the Trustee, on behalf of the Estate, is authorized to use such Postpetition Financing as set forth herein and in the Agreement. The Trustee shall use the Postpetition Financing in accordance with the Final budget between the Trustee and AJ Group Creditors (the "<u>Final Approved Budget</u>") and the Agreement. The Trustee may update the Final Approved Budget as necessary, or appropriate, and such updated budget accepted by AJ Group Creditors shall thereafter become the "Final Approved Budget"; provided, however, that any updated budget shall not provide for an amount of Postpetition Financing greater than the amount authorized under this Final Order. Any updated Final Approved Budget shall be filed on the docket of the Chapter 7 Case.

        4.        <u>Material Terms of the Postpetition Promissory Note ("Note")</u>.

      a.      **Borrower**: Trustee, solely in his capacity as trustee of the Debtor's Estate.

      b.      **Lender**: AJ Group Creditors.

      c.      **Maturity Date**: May 31, 2023.

      d.      **Interest**: Postpetition Obligations shall bear interest at a rate of 4% per annum and shall accrue and be paid upon the earlier of (i) the Maturity Date and (ii) at any time prior thereto upon the occurrence of an Event of Default or Sale Event (each as defined below).

      e.      **Default Interest**: If the Note is not paid by the Maturity Date or upon the occurrence of an Event of Default (as defined below), then the Postpetition Obligations shall thereafter bear interest at a rate of 10% per annum.

      f.      **Prepayment**: During the term of the Note, Borrower shall have the option of paying the unpaid Stated Principal Amount to the Postpetition Lender in advance of the Maturity Date, in whole or in part, at any time and from time to time upon written notice to Postpetition Lender. Borrower shall pay (or authorize Verte GA to pay) to the Postpetition Lender any fees arising under any master services agreements ("MSA") received by Verte GA from any third parties entering into short term MSA's to store their goods at the Leased Property within five (5) days of Verte GA's receipt of the same and such payments shall be applied to reduce the principal balance of the Note. The Borrower acknowledges and confirms that notwithstanding the Maturity Date, the Stated Principal Amount due under the Note, together with all accrued interest, charges and legal fees shall become immediately due and payable to the Postpetition Lender upon the sale of (i) the VPersonalty and (ii) the VLLC Interests.

      g.      **Events of Default**: An "Event of Default" under the Note, includes, without limitation, (i) Borrower's breach of any obligations thereunder, (ii) failure of Borrower to gain authority and approval of Postpetition Financing or Agreement on a final basis by March 29, 2023,

(iii) failure of the Borrower or Verte GA to obtain insurance at reasonable rates, (iv) an order shall be entered reversing, adversely amending, adversely supplementing, staying, vacating, or otherwise adversely modifying any material provision of the Final Order without the written consent of the Postpetition Lender, and (v) failure of any broker employed by the Trustee to sell the VLLC Interests or VPersonalty (each a "Sale Event"). For the avoidance of doubt, and notwithstanding anything herein to the contrary, all credit bid rights provided for in the Agreement are subject to 11 U.S.C. § 363(k).

       h.     **Carve-Out.** $75,000 to be paid from the proceeds of any Collateral to fund operational costs and any other chapter 7 administrative expenses incurred during the pendency of the Chapter 7 Case, including the Trustee's commission under 11 U.S.C. § 326, but only in the event the Estate does not realize any proceeds from a Sale Event. If a Sale Event occurs but does not produce net proceeds in excess of $75,000, the Postpetition Lender shall be obligated to fund the difference between $75,000 and the net proceeds from such Sale Event.

     5.     <u>Liens to Secure the Postpetition Obligations.</u> As security for the Postpetition Obligations, effective and perfected upon the date of this Final Order and without the necessity of the execution, recordation of filings by the Trustee or the Postpetition Lender of mortgages, security agreements, control agreements, pledge agreements, financing statements or other similar documents, or the possession or control by the Postpetition Lender of or over any Postpetition Collateral (as defined below), the following security interests and liens are hereby granted by the Trustee, on behalf of the Estate, to the Postpetition Lender for its benefit, subject and subordinate only to the Estate Share, the carve-out set forth above, and any fees due and owing to the Office of the United States Trustee (all such liens and security interests granted to the Postpetition Lender

for its benefit pursuant to this Final Order and the Postpetition Documents, the "Postpetition Liens"):

      a.    Pursuant to section 364(d)(1) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully perfected superpriority security interest in and lien upon all Collateral (as defined in the Agreement) and any postpetition receivables of the Debtor or the Estate, whether existing on the Petition Date or thereafter acquired (collectively, the "Postpetition Collateral"), which shall have priority over all other existing secured claims including, without limitation, and with the consent of the AJ Group Creditors, the 547 Defense Loans. For purposes of this Final Order, the Collateral shall expressly exclude the proceeds of the Estate's claims and causes of action under sections 502(d), 544, 545, 547, 548, 549, 550, and 553 of the Bankruptcy Code and any other avoidance actions under the Bankruptcy Code (collectively, "Avoidance Actions") and other Estate causes of actions, including without limitation any commercial tort claims (the "Estate Actions"), which Avoidance Actions and Estate Actions shall not be subject to the Postpetition Liens or any other liens.

    6.    <u>Perfection of Postpetition Liens</u>. The Postpetition Liens shall be, and they hereby are, deemed duly perfected and recorded under all applicable federal or state or other laws as of the date hereof, and no notice, filing, mortgage recordation, possession, further order, landlord or warehousemen lien waivers or other third party consents or other act, shall be required to effect such perfection; provided, however, that notwithstanding the provisions of section 362 of the Bankruptcy Code, the Postpetition Lender, may, at its sole option, file or record, on behalf of the Estate, any such UCC financing statements, notices of liens and security interests, mortgages, amendments to mortgages and/or other similar documents or instruments as the Postpetition Lender may require.  The Postpetition Lender may (in its sole discretion), but shall not be required

143059632.12

to, file a certified copy of this Final Order in any filing or recording office in any county or other jurisdiction in which the Debtor has real, or personal property and such filing or recording shall constitute further evidence of the Postpetition Lender's interest in the Postpetition Collateral.

7. <u>Future Claims or Liens</u>. No claim or lien having a priority superior to or pari passu with those granted by this Final Order to the Postpetition Lender shall be granted or allowed until the occurrence of the indefeasible payment in full in cash or immediately available funds of all of the Postpetition Obligations ("<u>Paid in Full</u>").

8. <u>Geekplus Reservation of Rights</u>. Notwithstanding anything to the contrary in this Order, the Postpetition Obligations, the 547 Defense Loans, and any other obligations (whether prepetition or postpetition) of the Debtor to the Postpetition Lender shall be secured by, and the Postpetition Liens and any prepetition liens held by the Postpetition Lender shall only attach to, any equipment or other property in which Geekplus America Inc. ("<u>Geekplus</u>") asserts an interest, including the warehouse robots, charging stations for the same, rack bases and other miscellaneous equipment in the Debtor's possession (collectively the "<u>GP Equipment</u>"), to the extent that any such security interests or liens attached to, or any such obligations were secured by, the GP Equipment prior to the Petition Date. In connection with any auction or sale process, any sale of the GP Equipment shall be the subject of a separate order of the Court and nothing in this Order shall affect nor impair any party's rights with regards to the GP Equipment or any proposed sale of the GP Equipment. Moreover, in connection with any such auction or sale process all bidders shall be required to allocate the portion of their proposed purchase price attributable to the GP Equipment (or exclude the GP Equipment from its bid) so that all affected parties (including Geekplus, the Postpetition Lender, and the Trustee) and the Court can make a separate determination as to the allocation of the proceeds arising from any proposed sale of the GP

Equipment, and all parties reserve their rights with respect to any such proposed sale of the GP Equipment. For the avoidance of doubt, nothing in this Order shall constitute a finding by the Court as to the extent, validity and priority of any party's interest in the GP Equipment and the extent, validity, and priority of any such interests shall be the subject of either a further agreement between Geekplus, the Postpetition Lender, and the Trustee or, in the absence of such agreement, a further order of the Court.

9. <u>Section 506(c) and 552(b) Waiver</u>. The Trustee, on behalf of the Estate, shall be deemed to have waived and will not assign or permit any other party to assert any claim under section 506(c) or 552(b) of the Bankruptcy Code for any costs and expenses incurred in connection with the preservation, protection, enhancement of, or realization by the AJ Group Creditors upon the Postpetition Collateral.

10. <u>Effect of Dismissal or Other Adverse Disposition</u>

    a. If an order dismissing the Chapter 7 Case is entered at any time prior to the Postpetition Obligations being Paid in Full, such order shall provide (in accordance with sections 105 and 349 of the Bankruptcy Code) that the Postpetition Liens granted to the Postpetition Lender shall continue in full force and effect and shall maintain their priorities as provided in this Final Order until all Postpetition Obligations shall have been indefeasibly paid in cash in full (and that such Postpetition Liens, shall, notwithstanding such dismissal, remain binding on all parties in interest).

    b. If any or all of the provisions of this Final Order are hereafter reversed, modified, vacated or stayed, such reversal, stay, modification or vacation shall not affect (i) the validity, priority or enforceability of any Postpetition Obligations incurred prior to the actual receipt of written notice by the Postpetition Lender of the effective date of such reversal, stay,

modification or vacation or (ii) the validity or enforceability of Postpetition Liens granted hereby with respect to any Postpetition Obligations. To the extent permitted by applicable law, notwithstanding any such reversal, stay, modification or vacation, any use of Postpetition Financing, or Postpetition Obligations incurred by the Estate prior to the actual receipt of written notice by the Postpetition Lender of the effective date of such reversal, stay, modification or vacation shall be governed in all respects by the original provisions of this Final Order, and the Postpetition Lender shall be entitled to all the rights, remedies, privileges and benefits granted in section 364(e) of the Bankruptcy Code, this Final Order and pursuant to the Postpetition Documents with respect to all uses of the Postpetition Financing and the Postpetition Obligations.

    c. Except as expressly provided in this Final Order or in the Postpetition Documents, or until the Postpetition Obligations are Paid in Full, the Postpetition Liens and all other rights and remedies of the Postpetition Lender granted by the provisions of this Final Order and the Postpetition Documents shall survive, and shall not be modified, impaired or discharged by (i) the entry of an order dismissing the Chapter 7 Case. Subject to further order of the Court, if any, the terms and provisions of this Final Order and the Postpetition Documents shall continue in the Chapter 7 Case, and the Postpetition Liens shall continue in full force and effect until the Postpetition Obligations are Paid in Full.

    d. Except as may be set forth in a further order of the Court entered after notice to the AJ Group Creditors and a hearing, the Trustee shall not sell, transfer, lease, encumber or otherwise dispose of any portion of the Collateral, without the prior written consent of the AJ Group Creditors (and no such consent shall be implied, from any other action, inaction or acquiescence by the AJ Group Creditors); provided, however, that such consent shall not be unreasonably withheld.

11. <u>No Modification of this Final Order</u>. The Trustee, on behalf of the Estate, shall not, without the Postpetition Lender's prior written consent (which shall be given or refused in their sole discretion), seek to modify, vacate or amend this Final Order or any Postpetition Documents.

12. <u>Binding Effect on Successors and Assigns</u>. The Postpetition Documents and the provisions of this Final Order, including all findings herein, shall be binding upon all parties in interest in the Chapter 7 Case, including, the Trustee, on behalf of the Estate, the Postpetition Lender and each of their respective successors and assigns (including any chapter 7 trustee hereinafter appointed or elected for the estate of the Debtor) and shall inure to the benefit of the Postpetition Lender, the Trustee, the Estate, and each of their respective successors and assigns.

13. <u>Reservation of Rights</u>. For the avoidance of doubt and notwithstanding anything to the contrary herein, nothing herein or in the Agreement shall release, waive, prohibit or otherwise affect any direct claims held by (i) Jossef Kahlon, (ii) TNJ Holdings, Inc., or (iii) any related party (collectively, the "<u>Kahlon Parties</u>") against (x) the AJ Group Creditors, or (y) any other party or entity receiving a release herein or under the Agreement. Such direct claims may include, but are not limited to, direct claims held by the Kahlon Parties regarding the Debtor, direct claims regarding matters before the Delaware Chancery Court in the matter styled as *In re Project Verte, Inc.*, C.A. No. 2022-0696-MTZ, and direct claims that any of the Kahlon Parties may assert in the proceeding captioned *JG Group Holdings LLC, et al. v. Jossef Kahlon*, 652196/2020 (N.Y. Sup. Ct.); provided, however, that nothing contained herein shall (a) release, waive, prohibit or otherwise affect the rights of the AJ Group Creditors with respect to the res judicata or estoppel effect of any order entered by the Delaware Chancery Court or any other court, or (b) be deemed a waiver of any rights by or consent of the AJ Group Creditors with respect to the assertion of such alleged claims.

143059632.12

14. <u>Objections Overruled or Withdrawn</u>. All objections to the entry of this Final Order have been withdrawn or are hereby overruled.

15. <u>Controlling Effect of this Final Order.</u> To the extent any provisions in this Final Order conflict with any provisions of the Motion, the Agreement, or any Postpetition Document, the provisions of this Final Order shall control.

16. <u>Final Order Effective</u>. This Final Order shall be effective as of the date it is entered by the Court notwithstanding the possible application of Bankruptcy Rules 4001(a)(3), 6004(h), 7062, 9014 or otherwise.

17. <u>Jurisdiction</u>. The Court shall retain jurisdiction with respect to all matters arising from or related to the Postpetition Financing, the Postpetition Documents, and/or to the interpretation, implementation, or enforcement of this Final Order.

**Dated: March 28th, 2023**
**Wilmington, Delaware**

LAURIE SELBER SILVERSTEIN
UNITED STATES BANKRUPTCY JUDGE

143059632.12