# Exhibit 1

## SETTLEMENT AGREEMENT

This Settlement Agreement (the "Agreement") is made February 23, 2023, by and among Alfred T. Giuliano, solely in his capacity as the Chapter 7 Trustee (the "Trustee") for the estate of Project Verte Inc. (the "Debtor"), and AC Group Holdings LLC, Chaluts Trust, JG Group Holdings LLC, JGFT LLC, and PGFT LLC (collectively, the "AJ Group Creditors", and together with the Trustee, the "Parties"). Capitalized terms used herein shall have the meanings set forth herein or in **Schedule 1** attached hereto.

## RECITALS

## Background

A.      On January 26, 2023 ("Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code in the Bankruptcy Court for the District of Delaware (the "Court").

B.      On January 27, 2023, the Office of the United States Trustee appointed the Trustee as Chapter 7 trustee, which appointment remains in effect [D.N. 6].

C.      Prior to the Petition Date, the Debtor operated as a full circle e-commerce platform that used automated fulfillment centers, proprietary software, and blockchain technology to service its customers. As part of those operations, the Debtor came into possession of certain equipment it purchased from Geekplus America Inc.("Geekplus"), which included certain warehouse robots, charging stations for the same, rack bases and other miscellaneous equipment (collectively the "GP Equipment"). The Debtor, Geekplus and the AJ Group Creditors are in a dispute regarding the ownership and lien priority of the respective parties with regards to the GP Equipment.

D.      Prior to the Petition Date, Hilco assisted the Debtor in marketing its Technology Business and such efforts resulted in the sale of the Debtor's Technology Business to Tech Holdings pursuant to the Chancery Sale Order dated January 20, 2023. As more fully set forth in that order, net proceeds of approximately $1,150,000 were realized (the "Tech Proceeds"), which are available for distribution to creditors and the AJ Group Creditors further agreed that they would not receive any distribution on account of their claims from the Tech Proceeds (but otherwise reserved all of their rights in all remaining Collateral).

E.      Upon information and belief, the Debtor's most valuable remaining assets include its 100% interest in non-debtor affiliate Verte GA, which is the current lessee at the Leased Property under a potentially below market lease—and personal property located at the Leased Property, including fixtures, furniture, and equipment (i.e., the VPersonalty).

F.      Subject to the Intercreditor Agreement, the AC Group Creditors, together with TNJ Holdings Inc., are the Debtor's primary prepetition lenders.

G.     To preserve and maximize the value of the Debtor's remaining assets (and in order to avoid a payment default under the valuable real property lease) , including the value of the VLLC Interests and the Debtor's personal property located at the Leased Premises for the period February 1-28, 2023, JA Logistics Holdings LLC, a wholly owned affiliate of the AJ Group Creditors, made advances in the aggregate amount of approximately  $400,000 to Verte GA under that certain Postpetition Promissory Note, with such obligation secured by a blanket lien on all of the Collateral (the "Postpetition Loans").

H.     The AJ Group Creditors have asserted secured and unsecured claims against the Debtor in connection with the prepetition Credit Agreements (as amended from time to time) and, subject to the Court's approval, the Postpetition Loans advanced by JA Logistics Holdings LLC.

## Reconciliation

I.     The Trustee reviewed the extent, validity and priority of the AJ Group Creditors' interests in the Debtor's assets as well as the circumstances leading up to the entry of the Chancery Sale Order. After such review and extensive arms-length negotiations, the Parties have agreed to resolve all remaining outstanding issues in accordance with the terms set forth herein.

**NOW, THEREFORE,** for good and valuable consideration, including the mutual covenants set forth below, the receipt and sufficiency of which the Parties hereby acknowledge, and intending to be legally bound, the Parties hereby agree as follows:

## SETTLEMENT TERMS

1.     **Incorporation.**  The Recitals set forth above are hereby incorporated in full and made a part of this Agreement. However, the Recitals are not to be construed as stating uncontested facts or deemed to be admissions.

2.     **Court Approval.**  As soon as practicable after the execution hereof by the Parties, the Trustee shall file with the Bankruptcy Court a Motion for entry of an Order approving this Agreement between the Parties pursuant to Fed. R. Bankr. P. 9019.  If this Agreement is not approved by the Bankruptcy Court on or before March 10, 2023, then this Agreement (at the election of the AJ Group Creditors) shall be deemed null and void and made without prejudice to either party.  This Agreement shall be deemed effective (the "Effective Date") on the date that the Bankruptcy Court enters an Order approving this Agreement.

3.     **Allowed Claims of JA Logistics Holdings LLC and AJ Group Creditors.**

(a)     AJ Group Creditors shall have allowed claims as follows (collectively, the "AJ Group Secured Claim**"**):

(i)     allowed secured first-super priority claim in the aggregate amount of up to $1,600,000 (collectively, the "DIP Loan Claim"), secured by a blanket lien on all of the Collateral under Section 364(d),

which amount is equal to the maximum amount of post-petition advances to be made by the AJ Group Creditors to the Debtor under the DIP Promissory Note (the "<u>DIP Loans</u>"). Such advances shall be used in accordance with the budget set forth in **<u>Schedule 2</u>** attached hereto and may be used to pay the ongoing expenses of Verte GA in order or maintain the value of the Verte GA assets including the  real estate lease and personal property of the Debtor located on the Leased Property as well as allow sufficient time to market remaining assets of the estate.[1] The DIP Loans shall be entitled to the protections of Section 364(d), the specific terms of which shall be subject to approval by the Court. The Trustee confirms that he has no objection to any fees arising under any master services agreements ("<u>MSA</u>") received by Verte GA from any parties entering into a short term MSA's to store their goods at the Leased Property being remitted to the AJ Group Creditors within five days of their receipt by Verte GA and applied to reduce the principal balance due and owning under the DIP Loans;

(ii)     allowed pre-petition secured claim in the amount of $12,500,000 (the "<u>547 Defense Claim</u>"), secured by a blanket lien on all of the Collateral, which amount represents the compromise of the claim to reduce the same from the aggregate of $18,957,819 advanced by the AJ Group Creditors to the Debtor after UCC-1's were filed on January 27, 2022 (collectively, the "<u>547 Defense Loans</u>");

(iii)    allowed unsecured claim in the aggregate principal amount of $37,212,020 (the "<u>Credit Agreement Claim</u>"), which is equal to the amount of advances made by the AJ Group Creditors to the Debtor under the Credit Agreements through December 31, 2019 (collectively, the "<u>Credit Agreement Loans</u>"); and

(iv)    allowed unsecured claims in the aggregate amount of $49,250,731 (the "<u>Unsecured Creditor Loan Claim</u>"), which is equal to the amount of advances made from January 1, 2020 to January 26, 2022, by the AJ Group Creditors to the Debtor as "survival expenses" and/or under the terms of the Convertible Promissory Notes (collectively, the "<u>Unsecured Creditor Loans</u>").

(v)     The DIP Loans and 547 Defense Loans shall continue to be secured by the GP Equipment to the extent such lien existed prior to the Petition Date and the order approving this Settlement shall not constitute a finding by the Court as to the extent, validity and priority of any party's interest in the GP Equipment and such

---

[1] For the avoidance of doubt, a portion of the proceeds of the DIP Loans shall be used to satisfy the Post Petition Loans.

interests shall be the subject of either a further agreement between Geekplus, AJ Group Creditors and the Trustee or in the absence of such agreement, a further order of the Court.

**4.    Estate Share and General Unsecured Claims Pool**.

(a)    For the benefit of the Debtor's estate, the AJ Group Creditors have agreed to carve out from net sale proceeds received from the disposition of Collateral, including without limitation, the VLLC Interests, the VPersonalty, and the FLLC Interests, in an aggregate amount not to exceed a maximum of $1,500,000 (collectively the "Estate Share"), irrespective of the source. In addition, the AJ Group Creditors: (1) reaffirm their agreement set forth in the Chancery Sale Order that none of their claims shall be entitled to receive a dividend from the proceeds arising from the sale of the Technology Business pursuant to the terms that order and that such proceeds are not counted into the calculation of the Estate Share and (2) the proceeds arising from liquidation of all other Collateral including but not limited to any accounts receivable, refunds, dividends made by Verte GA to the Debtor, GP Equipment, FLLC Interests, VLLC Interests, sale of the lease where Verte GA is the tenant (if requested by any buyer in lieu of the sale of the VLLC Interests) or causes of action (but excluding all Chapter 5 recoveries and commercial tort claims) shall be split 75/25 with the estate retaining 25% (and the amounts retained by the estate shall be utilized in the calculation of the Estate Share) and the AJ Group Creditors retaining 75%. Notwithstanding the foregoing, the Trustee and AJ Group Creditors agree that 100% of any return/refund of the security deposit (including any letters of credit) posted for the Verte GA lease as well as any other security deposits posted in favor of any utilities (collectively "Funded Deposits") shall be returned to the AJ Group Creditors as the funder of the same and shall not be the subject of the percentage split provided herein and shall not be the subject of the Estate Share; provided, however, that such Funded Deposits shall be used to pay down the balance of the 547 Defense Claim.

(b)    By this Agreement, the AJ Group Creditors and JA Logistics Holdings LLC, conditioned upon the full payment of the DIP Loan Claim, each waive and agree they shall not be entitled to receive any distributions from the Estate Share on account of any of their respective allowed unsecured claims, including the Unsecured Creditor Loan Claim, the Credit Agreement Claim, and any deficiency claim related to the 547 Defense Claim.  For the avoidance of doubt, the AJ Group Creditors and JA Logistics Holdings LLC retain their rights to any *pro rata* distribution on account of any deficiency claims related to the DIP Loan Claim.  And, due to the terms of the waterfall provisions of the Intercreditor Agreement and the Trustee's initial investigation: (i) TNJ, as holder of the contractually subordinated TNJ Loan Claim, shall not be entitled to receive any

4

distributions from the Estate Share on account of any of its claims and (ii) the releases contained in Section 7 below shall not apply to and the Trustee and Debtor specifically preserves all claims against TNJ, Jossef Kahlon, and Julian Kahlon.

5.    **Application of Net Sale Proceeds**.

(a)    The VLLC Interests (including any separate transfer of Verte GA's interest under the lease for the Leased Property if requested by any buyer) and the VPersonalty (including the GP Equipment) shall be marketed together in bulk in order to maximize value.  Any net cash proceeds received therefrom (i.e., after first satisfying the DIP Loan Claim) on account of the disposition of the VLLC Interests and VPersonalty, via auction sale to be conducted by Newmark Southern Region, LLC, a Georgia limited liability company d/b/a Newmark ("Newmark") or the Trustee on or before May 31, 2023, shall be allocated and paid as follows: (1) subject to the No Sale Provision, the first $350,000 of aggregate net cash proceeds paid by any successful buyer(s) shall be retained by the Debtor's estate ("Initial Estate Fund") and become part of the Estate Share;(2) all 100% of any Funded Deposits shall be allocated to the AJ Group Creditors and (3) all net cash proceeds thereafter paid by any successful buyer(s) shall be allocated and paid 25% to the Debtor's estate (which sum shall become part of the Estate Share) and 75% to the Collateral Agent (for distribution first, to pay any remaining unpaid secured claim amounts; and second, in accordance with the waterfall provisions of the Intercreditor Agreement); *provided, however*, that in no event shall the aggregate sum of all amounts allocated and paid to the Debtor's estate hereunder and otherwise on account of the Carve Out exceed the maximum amount of $1,500,000, *in toto*. All bidders shall be required to allocate the portion of their proposed  purchase price attributable to the GP Equipment ( or exclude the same from any bid)  so that all affected parties (including Geekplus, AJ Group Creditors and the Trustee)  and the Court can make a separate determination as to the allocation of the proceeds arising from the proposed sale of the GP Equipment and all parties reserve their rights with respect to the GP Equipment and the sale of the GP Equipment shall be the subject of a separate order of the Court and the approval of this Settlement Agreement shall not effect or impair parties rights with regards to the GP Equipment. The commissions and expenses charged by Newmark (or any permitted sub-broker) shall be borne 25% by the estate and 75% by the AJ Group and shall be paid by each of them from their share of the net proceeds of the sale of the Collateral following the payment of the DIP Loans in the first instance and the payment of the Initial Estate Fund in the second instance.  If no party (including the AJ Group Creditor) makes a bid for the VLLC Interests (and/or the lease for the Leased Property) then the Trustee shall promptly engage an auctioneer who shall liquidate the

5

VPersonalty and the net proceeds realized therefrom shall be allocated 50% to the estate and 50% to the AJ Group Creditors (and the estate's allocation shall be utilized in the calculation of the Estate Share, hereinafter "No Sale Provision").

6.      **Auction Procedures; Credit Bid Rights of AJ Group Creditors and Logistics Holdings.**

(a)      The Trustee agrees that in connection with any auction conducted by Newmark or the Trustee for the VLLC Interest and VPersonalty: (a) the AJ Group Creditors and/or JA Logistics Holdings LLC (and their permitted assignees as contemplated under subsection (b) below) shall have the right to credit bid (as permitted under Bankruptcy Code section 363(k), up to an aggregate amount comprised, in order of priority, first, to the DIP Loan Claim, and second to the 547 Defense Claim (collectively, "TB Credit Bid Rights")) toward the payment of the purchase price for the VLLC Interests and VPersonalty, and they further agree that the minimum cash component of their bid shall not be less than $350,000 and shall be treated as the Initial Estate Fund . TB Credit Bid Rights shall only be applicable to amounts bid in excess of required $350,000 cash portion of their bid. Nothing contained herein shall require the AJ Group or Logistics Holdings, or any of their related parties, to participate in any auction of the VLLC Interests or VPersonalty, and such participation shall be in their sole discretion and the failure to participate in the same shall in no way diminish or effect the terms of the releases contained in Section 7 below. The commissions due to Newmark in the case where the TB Credit Bid Rights are exercised shall be (i) on reduced basis from the commissions to be paid to them under Section 5(a) above, (ii) more fully set forth in the marketing agreement between Verte GA and Newmark and (iii) paid in full by the AJ Group Creditors notwithstanding the allocation terms for the commissions set forth in Section 5(a) above.

(b)      The AJ Group Creditors and/or JA Logistics Holdings LLC may assign the secured DIP Loan Claim and the 547 Defense Claim, to a newly formed entity which shall have the right to exercise the TB Credit Bid Rights thereafter (in accordance with the above terms and provisions). The Trustee shall have no objection to any such foregoing assignment(s), as applicable, so long as written notice and satisfactory evidence of any such assignment is provided to the Trustee at least three (3) business days prior to commencement of any auction of the VLLC Interests and VPersonalty.

(c)      The Trustee agrees that in connection with any auction sale of the FLLC Interests (which shall be conducted separately from the sale of the VLLC Interests and the VPersonalty), the bid procedures and credit bid provisions of this Section 6 shall apply to the exercise of any remaining

6

TB Credit Bid Rights; *provided however* that the minimum cash portion of the bid shall be no less than $100,000 and which shall be retained by the Trustee and become part of the Carve Out.  Nothing contained herein shall require the AJ Group or Logistics Holdings, or any of their related parties, to participate in any auction of the FLLC Interests, and such participation shall be in their sole discretion and the failure to participate in the same shall in no way diminish or effect the terms of the releases contained in <u>Section 7</u> below. Any parties claiming an interest in the FLLC Interests and/or the real property owned by such entity in the State of Texas are deemed to have preserved all of their objections and defenses arising in connection with any proposed future sale of the FLLC Interests and the approval of this Settlement Agreement shall not constitute a waiver of any objections or defenses.

7.    <u>**Settlement Releases.**</u> In consideration of (i) the  Estate Share payable to and for the benefit of the Debtor's estate, (ii) the waiver of distribution from the proceeds of the sale of the Technology Business arising from the Chancery Sale Order, (iii) the reduction of the 547 Defense Claim, and (iv)  the Post-Petition Loans and DIP Loans made to and for the benefit of the Debtor and its estate, and upon entry of a final order of the Bankruptcy Court approving the terms and provisions of this Agreement (which approval order must be in a form reasonably acceptable to the Trustee, JA Logistics Holdings LLC, and the AJ Group Creditors, and must be entered on or before March 10, 2023, failing which this Agreement shall be deemed null and void unless extended by mutual agreement of the Trustee, JA Logistics Holdings LLC, and the AJ Group Creditors) then, the Trustee on behalf of himself, the Debtor, its estate, and all of its creditors shall be deemed to have fully  released, remised and forever discharged the AJ Group Creditors, JA Logistics Holdings LLC, Tech Holdings, and all of their respective officers, directors, managers, shareholders, employees, subsidiaries , affiliates ,  successors, and assigns, including Jane Gol, Amir Chaluts, and Sara Rubenstein, of and from any and all claims, demands, obligations , suits, judgments, damages, losses, rights, remedies, charges, costs, debts and causes of action whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereafter arising at law or in equity under any theory of law or statute, based in whole or in part upon any act, omission, transaction, event or other occurrence taking place prior to the execution of this Agreement, which relate to the Debtor, the proceeding before the Chancery Court or the business operations of the Debtor and its subsidiaries and affiliates from the beginning of the world through the date of a Bankruptcy Court order approving the terms set forth in this Agreement, and including without limitation, any claims under Section 547 or 548 of the Bankruptcy Code or under the Uniform Voidable Transactions Act and any and all claims arising from or related to the sale of the Technology Business.

8.    <u>**Entire Agreement.**</u>    This Agreement sets forth the entire agreement and understanding of the Parties hereto with respect to the subject matter herein and supersedes and merges all prior oral and written agreements, discussions and understandings between the Parties with respect thereto, and none of the Parties shall be bound by any conditions, inducements or representations other than as expressly provided for herein.

**9.**    **<u>Amendment.</u>**    No term of this Agreement may be waived, modified, or amended except in writing signed by the party against whom enforcement of the waiver, modification or amendment is sought.

**10.**    **<u>Authority to Execute Agreement.</u>**    The Parties covenant and represent that they are fully authorized to enter into this Agreement and to carry out the obligations provided for in this Agreement.  Where a person has executed this Agreement on behalf of a party, that person covenants, warrants, and represents that he or she is authorized to do so by that party.

**11.**    **<u>Governing Law.</u>**    This Agreement shall be governed by Delaware law, without regard to principles of conflicts of laws.

**12.**    **<u>Counterparts.</u>**    This Agreement may be executed in one or more counterparts, including by email in PDF format, each of which shall be deemed an original, but all of which together constitute one and the same instrument.  Electronic copies of executed copies of this Agreement shall be deemed the equivalent of an original copy of this Agreement for all purposes.

*[Signatures on following page]*

142919104.8

**IN WITNESS WHEREOF**, the Parties have caused this Agreement to be executed the day and year first written above.

**FOX ROTHSCHILD LLP**

By: _____
Michael G. Menkowitz, Esq.
Jesse M. Harris, Esq.
2000 Market Street, 20th Floor
Philadelphia, PA 19103

*Proposed Attorneys for Alfred T. Giuliano,*
*Chapter 7 Trustee for the Estate of Project*
*Verte Inc.*

AC Group Holdings LLC
By: _____
Amir Chaluts, Manager

Chalute Trust
By: _____
Jane Gol, Trustee

JG Group Holdings LLC
By: _____
Jane Gol, Manager

JGFT LLC
By: _____
Jane Gol, Manager

PGFT LLC
By: _____
Jane Gol, Manager

9

## Schedule 1

"**AJ Group Creditors**" shall collectively mean AC Group Holdings LLC, Chaluts Trust, JG Group Holdings LLC, JGFT LLC, and PGFT LLC.

"**Borrower**," "**Company**," or "**Debtor**" shall mean Project Verte Inc.

"**Chancery Sale Order**" shall mean the Chancery Court order dated January 20, 2023, approving the sale of the Technology Business to Tech Holdings.

"**Collateral**" shall mean the collateral in which the secured party is granted a security interest by this Agreement and which shall include the following personal property of the Debtor, whether presently owned or existing or hereafter acquired or coming into existence, wherever situated, and all additions and accessions thereto and all substitutions and replacements thereof, and all proceeds, products and accounts thereof, including, without limitation, all proceeds from the sale or transfer of the Collateral and of insurance covering the same and of any legal claims in connection therewith, and all dividends, interest, cash, notes, securities, equity interest or other property at any time and from time to time acquired, receivable or otherwise distributed in respect of, or in exchange for, any or all of the Collateral (as defined below):

    (i)    Patents issued or assigned to and all patent applications made by Debtor and all exclusive licenses to Debtor from third parties or other rights to use patents owned by such third parties, including, without limitation, the patents, patent applications and exclusive licenses listed on Schedule A to the Credit Agreements' Security Agreements, along with any and all (1) inventions and improvements described and claimed therein, (2) reissues, divisions, continuations, extensions and continuations-in-part thereof, (3) income, royalties, damages, claims and payments now and hereafter due and/or payable under and with respect thereto, including, without limitation, damages and payments for past, present or future infringements thereof, (4) rights to sue for past, present and future infringements thereof, and (5) any other rights corresponding thereto throughout the world (collectively, "<u>Patents</u>");

    (ii)    All contract rights and other general intangibles, including, without limitation, all partnership interests, membership interests ( and including the membership interests in VLLC and FLLC and any and all distributions, income or dividends made to Debtor arising from such ownership ) , stock or other securities, rights under any of the Organizational Documents, agreements related to the Patent, licenses, distribution and other agreements, computer software (whether "off-the-shelf", licensed from any third party or developed by any Debtor), computer software development rights, leases, franchises, customer lists, quality control procedures, grants and rights, goodwill, trademarks, service marks, trade styles, trade names, patents (including the Patent), patent applications, copyrights, and income tax refunds;

10

(iii)    All of Debtor's personal property wherever located, both now owned and hereafter acquired, including, but not limited to, all equipment, fixtures, inventory, goods, documents, accounts, security deposits ( including those posted on behalf of Verte GA and any utility companies) , letter of credit proceeds, deposit accounts, chattel paper, instruments, letter of credit rights and investment property, and all additions and accessions to, all spare and repair parts, special tools, equipment and replacements for, all returned or repossessed goods the sale of which gave rise to, and all accessions, additions, amendments, modifications, replacements, and substitutions to, of or for the foregoing; and

(iv)    The products and proceeds of all of the foregoing Collateral set forth in clauses (i)-(iii) above.

(v)    For the avoidance of doubt, Collateral shall not include commercial tort claims or claims under Chapter 5 of the Bankruptcy Code.

"**Collateral Agent**" shall mean the Collateral Agent as defined under the Intercreditor Agreement, including any successor(s) thereto.

"**Convertible Promissory Notes**" shall mean those certain convertible promissory notes approved by the Board of Directors of the Company from time to time and entered into by and between the Borrower and each of the respective AJ Group Creditors.

"**Credit Agreements**" shall mean those certain Line of Credit Agreements, Line of Credit Promissory Notes and Security Agreements, each dated as of September 27, 2017, by and among Borrower and each of the AJ Group Creditors and TNJ (as defined below), respectively.

"**DIP Promissory Note**" shall mean that Bankruptcy Code section 364(d) superpriority loan advanced under that certain Promissory Note, dated as of [March 6, 2023], by and among the AJ Group Creditors and the Debtor as such note may be amended, modified, or extended and shall include the roll up of the Postpetition Promissory Note.  The DIP Promissory Note shall be secured by a super priority lien on the Collateral with priority over all existing liens on the Collateral.

"**FLLC Interests**" shall mean the limited liability company membership interests in Flowerdale LLC that are owned by the Company and subject to the senior liens of the AJ Group Creditors and TNJ.

"**Forbearance Agreement**" shall mean that certain Forbearance Agreement dated as of July 29, 2022, by and among Borrower and the AJ Group Creditors, as amended from time to time.

"**Intercreditor Agreement**" shall mean that certain Amended & Restated Intercreditor Agreement dated as of June 18, 2019, by and among Borrower, the AJ Group Creditors, and TNJ.

11

"**JA Logistics Holdings LLC**" shall mean the affiliate of the AJ Group Creditors and lender under the DIP Promissory Note.

"**Leased Property**" shall mean the property located at 250 Declaration Drive, McDonough, Georgia 30253 for which Verte GA is the tenant.

"**Postpetition Promissory Note**" shall mean that certain Promissory Note, dated as of February 6, 2023, by and among JA Logistics Holdings LLC and Verte GA, as amended, modified, or extended in the principal amount of $400,000.

"**Technology Business**" shall mean the software as a service ("<u>SaaS</u>") business previously conducted by the Company, including but not limited to unified commerce, order management, integration management, warehouse management, and transportation management services, and related assets supporting the Technology Business, which business and assets were sold to Tech Holdings pursuant to the Chancery Sale Order.

"**Tech Holdings**" shall mean JA Tech Holdings LLC.

"**TNJ**" shall mean TNJ Holdings Inc.

"**TNJ Loan Claim**" shall mean the asserted, contractually subordinated, secured debt owed by Borrower to TNJ in the principal amount of $9,054,760.

"**Verte GA**" shall mean Verte Logistics GA LLC.

"**VLLC Interests**" shall mean the limited liability company membership interests in Verte GA that are owned by the Company and subject to the liens in favor of the AJ Group Creditors and TNJ.

"**VPersonalty**" shall mean the Company's personal property (including, racking, shelving and equipment) and subject to the liens in favor of the AJ Group Creditors and TNJ.

142919104.8

# <u>Exhibit 2</u>

PVI - Approved Budget.xlsx

| | Feb-23 | Mar-23 | Apr-23 | May-23 | | Total |
|---|---|---|---|---|---|---|
| **Revenue** | | | | | | |
| **Expenses** | ($413,687) | ($364,215) | ($364,215) | ($364,215) | | ($1,506,333) |
| **Net** | ($413,687) | ($364,215) | ($364,215) | ($364,215) | | ($1,506,333) |

*As clients contract w/ Warehouse, Revenue will be added accordingly

Client TBD 1
Client TBD 2
Client TBD 3
Client TBD 4

| Expenses | Feb-23 | Mar-23 | Apr-23 | May-23 | | Total |
|---|---|---|---|---|---|---|
| **Commercial Insurance*** *Estimates waiting on quotes* | **$12,400** | **$12,400** | **$12,400** | **$12,400** | | **$49,600** |
| Commercial Insurance | **$2,250** | **$2,250** | **$2,250** | **$2,250** | | $9,000 |
| Cyber Insurance | | | | | | $0 |
| Workers' compensation Insurance | **$2,250** | **$2,250** | **$2,250** | **$2,250** | | $9,000 |
| Warehouse Liability | **$7,900** | **$7,900** | **$7,900** | **$7,900** | | $31,600 |
| **Software and Internet Expenses** | **$2,250** | **$2,250** | **$2,250** | **$2,250** | | **$9,000** |
| GSuite (Estimated w/ reduced licenses) | $1,500 | $1,500 | $1,500 | $1,500 | | $6,000 |
| MSOffice License (Estimated w/ reduced licenses) | $500 | $500 | $500 | $500 | | $2,000 |
| QuickBooks  (Estimated w/ reduced licenses) | $250 | $250 | $250 | $250 | | $1,000 |
| **Taxes & Licenses** | **$3,618** | **$3,618** | **$3,618** | **$3,618** | | **$14,474** |
| Henry County | $808 | $808 | $808 | $808 | | $3,230 |
| GA Tax | $669 | $669 | $669 | $669 | | $2,675 |
| Property Tax | $2,142 | $2,142 | $2,142 | $2,142 | | $8,568 |
| **Payroll** | **$48,861** | **$46,485** | **$46,485** | **$46,485** | | **$188,316** |
| Warehouse Payroll | $31,581 | $29,205 | $29,205 | $29,205 | | $119,196 |
| Security | $5,280 | $5,280 | $5,280 | $5,280 | | $21,120 |
| Blue Cross* *Estimate waiting on quote* | $12,000 | $12,000 | $12,000 | $12,000 | | $48,000 |
| Consultant(s)* *Estimate subject to lender agreement* | $28,000 | $27,000 | $24,000 | $20,000 | | $99,000 |
| **Rent** | **$281,175** | **$275,172** | **$275,172** | **$275,172** | | **$1,106,691** |
| Base Rent | $202,547 | $202,547 | $202,547 | $202,547 | | $810,188 |
| CAM | $22,278 | $22,278 | $22,278 | $22,278 | | $89,112 |
| Late Fee | $6,003 | | | | | $6,003 |
| Insurance | $6,517 | $6,517 | $6,517 | $6,517 | | $26,068 |
| Management Fee | $5,396 | $5,396 | $5,396 | $5,396 | | $21,584 |
| Property Taxes | $38,434 | $38,434 | $38,434 | $38,434 | | $153,736 |
| **Other Expenses** | **$45,483** | **$4,390** | **$4,390** | **$4,390** | | **$58,653** |
| Georgia Waste Systems Inc | $3,500 | $3,500 | $3,500 | $3,500 | | $14,000 |
| AT&T Internet | $890 | $890 | $890 | $890 | | $3,560 |
| 401(k)* *Estimate subject to lender agreement* | $41,093 | | | | | $41,093 |
| Contingency* *Estimate subject to lender agreement* | $15,000 | $15,000 | $15,000 | $15,000 | | $60,000 |
| **Utilities** | **$19,400** | **$19,400** | **$19,400** | **$19,400** | | **$77,600** |
| City of McDonough (Water, Trash) | $400 | $400 | $400 | $400 | | $1,600 |
| Natural Gas | $4,000 | $4,000 | $4,000 | $4,000 | | $16,000 |
| Georgia Power | $15,000 | $15,000 | $15,000 | $15,000 | | $60,000 |
| **Bank Fees** | **$500** | **$500** | **$500** | **$500** | | **$2,000** |
| Signature Bank | $500 | $500 | $500 | $500 | | $2,000 |
| **Referral Fees** | **$0** | **$0** | **$0** | **$0** | | **$0** |
| **Total Expenses** | **$413,687** | **$364,215** | **$364,215** | **$364,215** | | **$1,506,333** |