**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>PROJECT VERTE INC.,<br><br>Debtor. | Chapter 7<br><br>Case No. 23-10101-LSS<br><br>**Hearing Date: TBD**<br>**Obj. Deadline: TBD** |

**CHAPTER 7 TRUSTEE'S MOTION FOR (I) AN ORDER
(A) APPROVING BIDDING PROCEDURES; (B) SCHEDULING BID DEADLINE,
AUCTION DATE, AND SALE HEARING AND APPROVING NOTICE THEREOF;
AND (II) AN ORDER APPROVING THE SALE OF CERTAIN OF THE DEBTOR'S
ASSETS FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS AND LIABILITIES**

Alfred T. Giuliano (the "Trustee"), the Chapter 7 trustee for the estate of Project Verte Inc. (the "Debtor"), by and through his attorneys, Fox Rothschild LLP, hereby files this Motion (the "Sale and Bidding Procedures Motion") for (1) entry of an order, in substantially the form attached as **Exhibit "A"** hereto (the "Bidding Procedures Order") (a) approving bidding procedures (the "Bidding Procedures") at a potential public auction (the "Auction") for the sale (the "Sale") of certain of the Debtor's assets (the "Purchased Assets") and the proposed Asset Purchase Term Sheet (the "Agreement")[1] in conjunction therewith, and (b) scheduling the bid deadline, Auction date, and Sale hearing and approving the form and manner of notice thereof; and (2) following a subsequent hearing (the "Approval Hearing"), entry of an order (the "Approval Order")[2] approving (a) the Sale of the Purchased Assets under the Agreement to the Purchaser (as defined herein) or an entity or entities (the "Successful Bidder" or "Successful Bidders") submitting the Successful

---

[1] Capitalized terms not otherwise defined herein shall have their meanings as ascribed to them in the Bidding Procedures, and if not in the Bidding Procedures, the Agreement, and if not in the Bidding Procedures or the Agreement, the Settlement Agreement (as defined herein).

[2] The proposed Approval Order will be filed by the Trustee in advance of the Approval Hearing.

Bid (as defined herein) to be determined at the Auction, free and clear of liens, claims and interests, (b) the agreement and the obligations incurred by the Trustee and the Purchaser or Successful Bidder thereunder, and (c) granting related relief.

In support of the Sale and Bidding Procedures Motion, the Trustee respectfully states as follows:

## JURISDICTION

1. The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (O), and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.[3]

2. Venue of this proceeding and this Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory predicates for the relief sought herein are Sections 105(a), 363(b), 363(f), 363(k), and 363(m) of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Rule 6004-1.

## BACKGROUND

### A. Bankruptcy Procedural Background

4. On January 26, 2023 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code.

5. On January 27, 2023, the Office of the United States Trustee appointed the Trustee

---

[3] The Trustee consents to entry of final orders or judgments by the Court if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

146364606.7

as Chapter 7 trustee, which appointment remains in effect [D.N. 6].

6. The Debtor formerly operated as a full circle e-commerce platform that used automated fulfillment centers, proprietary software, and blockchain technology to service its customers.

7. Due to substantial prepetition disputes among members of the Debtor's board of directors, the Debtor first filed for receivership under state law, then ultimately filed this Chapter 7 case to preserve potential causes of action under Chapter 5 of the Bankruptcy Code and pursue a streamlined sale of its assets.

8. Among these assets is (i) the Debtor's 100% interest (the "VLLC Interests") in its wholly owned subsidiary, Verte Logistics GA LLC ("Verte GA"), who is the current lessee under a potentially valuable lease (the "Lease") for property located at 250 Declaration Drive, McDonough, Georgia 30253 (the "Leased Property") and (ii) personal property located at the Leased Property, including the property identified on the schedule attached hereto as **Exhibit "B"** and incorporated by reference herein (the "Personal Property").

9. To fund ongoing rent-related obligations and other necessary expenses, as well as to maximize the value of the estate's assets, including the VLLC Interests, the Trustee secured commitments for up to $1,600,000 in financing from the Debtor's prepetition lender group (as more specifically identified in the Settlement Agreement, the "AJ Group Creditors"). The Court approved this financing, together with a settlement agreement, which included the allocation and distribution of certain sale proceeds, between the Trustee and the AJ Group Creditors ("Settlement Agreement") on March 26, 2023 [D.N. 93].

10. Consistent with the need for the postpetition financing, and in accordance with the terms of the Settlement Agreement, the Trustee and Verte GA, together with Newmark Southern

Region, LLC ("Newmark"),[4] have continued to market the Lease, the VLLC Interests, and the Personal Property to potential purchasers.

11. Among other things, Newmark has:

- sent out weekly (often twice per week) email blasts to all known brokers in Atlanta;
- made inquiries with the top brokers in Atlanta
- made inquiries with tenants in the market area (i.e., tenants within a 10-mile radius that utilize at least 400,00 s/f of space);
- made inquiries with Newmark retail clients that would potentially be interested in the space;
- made inquiries with Newmark's brokerage network throughout the Country;
- made inquiries with large logistics companies (also included in email blast);
- made inquiries with railroad representatives regarding the possibility of adding a rail spur to the Leased Property; and
- conducted several inspections of the Leased Property with prospective purchasers and their representatives.

12. Ultimately, AC Group Holdings LLC, on behalf of itself and as collateral agent for the AJ Group Creditors or its assignee or designee (the "Purchaser"), and the Trustee entered into the Agreement, under which the Purchaser will purchase the Purchased Assets, subject to any better or higher offers, including a Competing Bid at the potential Auction.[5]

13. The material terms of the Agreement are as follows:[6]

| Provision | Terms |
|---|---|
| *Purchase Price* | $1,950,000, comprised of (i) $350,000 in Cash (the "Cash Bid"), plus (ii) a credit bid in the full $1,6000,000 allowed amount of the Purchaser's |

---

[4] In January 2023, and consistent with the terms of the approved Settlement Agreement, non-debtor Verte GA engaged Newmark, a global commercial real estate firm, to market the Leased Property for a potential sublease or sale transaction.

[5] Members of the Purchaser are the owners of the Debtor, and either currently serve, or previously served, in a management capacity for the Debtor. Therefore, the Purchaser may be deemed an "Insider" as defined under Section 101 of the Bankruptcy Code. The extensive marketing process conducted by Newmark, as well as the proposed Bidding Procedures and Auction and Sale process, provide a more than sufficient safeguard to ensure the fairness of the process and proposed transactions.

[6] To the extent there is a conflict between the summarized terms and the terms of the Agreement, then the terms of the Agreement shall govern.

| | |
|---|---|
| | DIP Loan Claim under the Settlement Agreement (the "Credit Bid") and in accordance with Section 363(k). |
| *Purchased Assets* | (a) all membership interests in Verte GA ("VLLC Interests"), including any distributions or dividends accrued thereunder;<br><br>(b) all of Seller's right, title, and interest in, to and under the Personal Property at the Leased Property, and any general intangibles related thereto;<br><br>(c) all of Seller's rights under warranties, indemnities, and all similar rights against third parties to the extent related to any Purchased Assets; and<br><br>(d) all goodwill and the going concern value of the Purchased Assets and the business.<br><br>For the avoidance of doubt, a determination of the priority of Seller's right, title, and interest in, to and under the GP Equipment (as defined in the Settlement Agreement) relative to Geekplus' right, title, and interest in, to and under the same shall be the subject of a separate Bankruptcy Court Order. |
| *Assumed Liabilities* | The parties agree that Purchaser will not assume any liabilities of Seller as part of the Sale (including, without limitation, any long-term debt, tax liabilities or other known or unknown fixed or contingent liabilities) or obligations due and owing to GeekPlus (as defined in the Settlement Agreement). |
| *Closing* | The Acquisition will be subject to (i) the entry of the Sale Order (as defined below); (ii) the execution and delivery of customary closing deliverables by Seller to Buyer (including (a) execution of appropriate bills of sale and (b) Verte GA's receipt of an Estoppel Certificate from the landlord of the Leased Property as required under Section 12 of the Lease for the Leased Property), in form and substance satisfactory to the Buyer; (iii) the absence of any default of the landlord's obligations under the Lease; and (iv) the premises covered by the Lease not being the subject of a casualty.  The closing on the Purchased Assets shall take place on the second business day following the entry of the Sale Order (at the Buyer's sole discretion, conditioned upon the absence of a stay or motion to reconsider or amend the order). |
| *Sale Free and Clear* | Seller shall promptly file with the Bankruptcy Court a motion and notice seeking entry of an Order ("Sale Order") approving the sale of the Purchased Assets to Purchaser free and clear of all liens, claims, encumbrances, and interests, including without limitation, options, |

5

146364606.7

| | |
|---|---|
| | warrants and/or puts in respect of the VLLC Interests, if any, but subject to receipt of any higher or better offers.<br><br>Newmark's marketing efforts shall be deemed in lieu of any further need for active marketing since no other offers were received by Newmark or the Trustee by May 31, 2023, as required in the Settlement Agreement.<br><br>The Sale Order shall be in a form acceptable to Purchaser and must be entered on or before June 29, 2023 and shall provide for the sale of the Purchased Assets free and clear of all liens, claims, encumbrances, and interests, and find that (i) Purchaser is a "good faith" purchaser under Section 363(m) of the Bankruptcy Code, (ii) the Purchase Price was not controlled by an agreement in violation of Section 363(n) of the Bankruptcy Code, (iii) notice of the sale was adequate, (iv) proceeds shall be distributed under and subject to the Settlement Agreement, and (v) the tangible net worth of Verte GA following the Acquisition is at least equal to Verte GA's tangible net worth as of the date of the Lease. |
| *Bidding Procedures* | The Agreement is subject to approval by the Bankruptcy Court and the consideration by Seller of higher or better competing bids with respect to an alternative transaction (each, a "Competing Bid"), which alternative transaction shall be subject to Purchaser's rights under the Settlement Agreement. Competing Bids shall be due to the Seller on or before June 23, 2023, and any auction to take place in Seller's counsel office in Wilmington Delaware on June 26, 2023, and a sale hearing to occur on or before June 27, 2023. |

14. Despite securing a buyer for the Purchased Assets, and despite several months of robust marketing efforts, the Trustee and Verte GA will continue to market the Purchased Assets to other potential purchasers who continue to express interest. Doing so will maximize the competitive sale process, as well as ensure the greatest possible recovery from the Sale.

15. Accordingly, the Trustee is seeking to sell all the Purchased Assets to the Purchaser, or, alternatively, to the Successful Bidder at the Auction consistent with the Bidding Procedures to the extent a Competing Bid (and a Qualified Bid under the Bidding Procedures) is received.

B. **Proposed Bidding Procedures, Auction, and Sale of the Purchased Assets**

16. A copy of the Bidding Procedures is attached to the proposed Bidding Procedures Order as **Exhibit "1"**.

17. The Bidding Procedures are integral to the Sale process and seek to provide a focal point for the ongoing efforts to attract Qualified Bidders, provide direction to the parties interested in presenting a Competing Bid, and bring the process to a fair, orderly, and expeditious conclusion. Pursuant to the Bidding Procedures summarized below, potential Bidders will receive notice of the procedure for qualifying as a Qualified Bidder and for submitting a Qualified Bid. In addition, parties in interest will receive reasonable notice of a hearing to consider the proposed Sale and have an opportunity to object to the proposed Sale.

18. A summary of the proposed Bidding Procedures is as follows:[7]

| **Provision** | **Terms** |
|---|---|
| *Bidder* | To be deemed a Bidder, the interested party must deliver the following to the Trustee: (1) an executed confidentiality agreement; and (2) a statement and other factual support demonstrating to the Trustee's reasonable satisfaction that the Bidder has a *bona fide* interest in purchasing one (1) or more Lots of the Purchased Assets. |
| *Due Diligence* | Once deemed a Bidder, the Trustee, until the business day immediately preceding the Bid Deadline, will deliver to such Bidder information with respect to the Purchased Assets that the Trustee determines to be reasonably requested, appropriate under the circumstances, and within the Trustee's custody or control. |
| *Bid Deadline* | **June 23, 2023 at 10:00 a.m. (prevailing ET)** |
| *Qualified Bids* | Assuming that there is an Auction, a Bidder shall have submitted a Qualified Bid by the Bid Deadline if it satisfies each of the following conditions (the "Bid"):<br><br>(a) Written Submission of Modified Agreement and Commitment to Close. Bidders must submit a Bid by the Bid Deadline in the form of an executed mark-up of the Agreement (each a "Modified Agreement") reflecting such Bidder's proposed changes to the Agreement (together with a blackline of the Modified Agreement against the Agreement), and a written and binding commitment to close on the terms and conditions set forth therein. Each Modified Agreement shall (i) have substantially similar terms and conditions |

---

[7] To the extent there is a conflict between the summarized terms and the terms of the Bidding Procedures, then the terms of the Bidding Procedures shall govern.

146364606.7

|  | as the Agreement, (ii) contain terms and conditions in the aggregate no less favorable to the Debtor's estate than the terms and conditions in the Agreement, (iii) include a total purchase price of at least $2,200,000, and (iv) allocate the portion of the proposed purchase price under the Modified Agreement attributable to the GP Equipment; *provided*, *however*, the Trustee shall have the sole discretion to sell the Purchased Assets in Lots (each, a "Lot Bid") in accordance with the Bidding Procedures Order and Bidding Procedures.<br><br>(b) Irrevocable. A Bid must be irrevocable until four (4) business days after entry of the Approval Order (the "Termination Date").<br><br>(c) Contingencies. A Bid may not be conditioned on obtaining financing or any internal approval or on the outcome or review of due diligence. Any other contingencies associated with a Bid may not, in the aggregate, be materially more burdensome than those set forth in this Agreement.<br><br>(d) Financing Sources and Evidence of Financial Ability to Close. A Bid must identify the actual Bidder and owners and ultimate parent company of the Bidder and contain written evidence of a commitment for financing or other evidence of the ability to fund and consummate the Sale on or before a closing date satisfactory to the Trustee with appropriate contact information for such financing or funding sources.<br><br>(e) No Fees Payable to Bidder. A Bid may not request, be conditioned on, or otherwise entitle the Bidder to any break-up fee, expense reimbursement or similar type of payment. A Bidder shall be deemed to waive the right to pursue a substantial contribution claim under 11 U.S.C. § 503 related in any way to the submission of its bid or the Bidding Procedures.<br><br>(f) Good-Faith Deposit. Each Bid must be accompanied by a cash deposit in the amount of $100,000 (a "Good Faith Deposit"), which shall be paid to the Trustee to be held in an escrow account established by the Trustee.[8] |
| --- | --- |
| *Bid Assessment Criteria* | A Qualified Bid, the Opening Bid (as defined below), and any subsequent Overbids at the Auction may be valued by the Trustee based upon factors such as: (a) the amount and nature of the consideration; (b) the proposed assumption of liabilities, if any; (c) the ability of the Qualified Bidder to |

---

[8] For the avoidance of doubt, the Purchaser is not required to submit a Good Faith Deposit but shall nevertheless be deemed a Qualified Bidder, and the Agreement deemed a Qualified Bid.

8

| | |
|---|---|
| | close the proposed transaction; (d) the proposed closing date and the likelihood, extent and impact of any potential delays in closing; (e) any purchase price adjustments; (f) the impact of the contemplated transaction on any actual or potential litigation; (g) the net economic effect of any changes from the Agreement, if any, contemplated by the contemplated transaction documents (the "Contemplated Transaction Documents"), (h) the net after-Tax consideration to be received by the Trustee; (i) the net amounts to be paid to the Debtor's estate; and (j) such other considerations as the Trustee deems relevant in his reasonable business judgment (collectively, the "Bid Assessment Criteria") |
| *Purchaser's Bid* | For purposes of the Bidding Procedures and the Auction, (i) the Purchaser shall be deemed a Qualified Bidder and shall have exercised the right to submit a credit bid under the terms of the Settlement Agreement (the "Credit Bid"), (ii) the Bid submitted by the Purchaser under the Agreement shall be deemed a Qualified Bid, and (iii) the Qualified Bid submitted by the Purchaser under the Agreement shall be deemed the current Opening Bid (the "Initial Opening Bid") as of the date of this Motion. |
| *Auction Date*[9] | **June 26, 2023 at 9:00 a.m. (prevailing ET)** |
| *Approval Hearing* | **June 27, 2023 at 9:00 a.m. (prevailing ET)**, subject to any continuance or postponement by the Bankruptcy Court. |
| *"As Is, Where Is"* | Any Sale shall be on an "as is, where is" basis and without representations or warranties of any kind, nature, or description by the Trustee, his professionals, or the Debtor's chapter 7 estate, whether written or verbal, whether express, implied or by operation of law, except and solely to the extent expressly set forth in the Agreement or Modified Agreement of the Successful Bidder or the Back-up Bidder, as applicable.<br><br>Except as otherwise provided in the Agreement of the Successful Bidder or the Back-up Bidder, as applicable, all of the Debtor's right, title and interest in the Purchased Assets shall be sold free and clear of liens, claims, interests, encumbrances and liabilities as proposed in the form of the Approval Order (collectively, the "Liabilities"), with any Liabilities to attach to the proceeds of the Sale as permitted by law and provided in the proposed form of the Approval Order. |
| *Closing* | Except to the extent of any contrary provision in the Agreement or Modified Agreement of the Successful Bidder or the Back-up Bidder, as applicable, the ("Closing") shall occur on the date of the Approval Order, or at such |

---

[9] The Trustee will only have an Auction if he receives prior to the Bid Deadline, other than the Initial Opening Bid, (1) a Qualified Bid for the entirety of the Purchased Assets, or (2) one or more Lot Bids (each of which must be a Qualified Bid), then the Trustee will conduct an Auction.

9

| | |
|---|---|
| | other time or place as the Trustee and the Successful Bidder or the Back-up Bidder, as applicable, may agree. |
| *Reservation of Rights* | The Trustee reserves the right to amend the Bidding Procedures or the bidding process at any time and from time to time in any manner that he determines will best promote the goals of the Bidding Procedures, including extending or modifying any of the dates described therein. The Trustee shall promptly notify parties in interest and potential Bidders of any such modifications. |

19. To the extent a Qualified Bid is received by the Trustee other than the Agreement, the Trustee proposes to sell through a public Auction the Purchased Assets. Because of the nature and volume of the Purchased Assets to be sold, and to facilitate competitive bidding, the Trustee has the sole discretion to sell the Purchased Assets as Lot Bids in accordance with the Bidding Procedures. The Trustee has established three (3) initial Lots of the Purchased Assets that Qualified Bidders may submit a Lot Bid for one (1) or more of the Lots and the associated assets listed below. The Lots are currently as follows:

| **Lot** | **Purchased Assets** |
|---|---|
| 1 | VLLC Interests **and** Personal Property |
| 2 | VLLC Interests |
| 3 | Personal Property |

20. The Trustee has received from the Purchaser a Lot Bid in the amount of $1,950,000.00 (consisting of the Cash Bid and the Credit Bid) for the Purchased Assets in Lot 1. Nevertheless, the Trustee will continue to solicit and accept Qualified Bids for all Lots to ensure that the highest and best offer is received.

    C.    **Proposed Notice Procedures**

21. The Trustee will cause to be served, within two (2) days after the issuance of the Bidding Procedures Order, by first-class mail, postage prepaid or email (i) notice of the Bid

Deadline, Auction, and Approval Hearing substantially in the form annexed to the Bidding Procedures Order as **Exhibit "C"** (the "Notice of Bid Deadline, Auction, and Approval Hearing") (ii) the Bidding Procedures Order including the Bidding Procedures attached thereto, and (iii) the Sale and Bidding Procedures Motion (collectively with the Notice of Bid Deadline, Auction and Approval Hearing, the Bidding Procedures Order and the Bidding Procedures, the "Sale Package"), upon: (a) all potential buyers previously identified or solicited by the Trustee or Verte GA and any additional parties who have previously expressed an interest in potentially acquiring some or all of the Purchased Assets, (b) proposed Purchaser and its counsel, (c) all other potentially interested parties identified by the Trustee and his professionals, (d) the Office of the United States Trustee for the District of Delaware, and (e) all parties who have requested notice in the Debtor's bankruptcy case under Fed. R. Bankr. P. 2002. Such notice is sufficient and appropriate notice of the Sale with respect to known interested parties.

22. Any objections to either the Sale of the Purchased Assets to the proposed Purchaser under the Agreement or to the Successful Bidder at Auction under a Modified Agreement must be filed with the Court and served on the following (collectively, the "Objection Notice Parties"): (i) the Office of the United States Trustee for the District of Delaware; (ii) undersigned counsel to the Trustee; (iii) counsel to the Purchaser; and (iv) counsel for the Successful Bidder, so as to be received no later than the Approval Hearing (the "Approval Objection Deadline").

## RELIEF REQUESTED

23. This Sale and Bidding Procedures Motion seeks relief in two (2) parts. First, it seeks approval of the Bidding Procedures relating to the proposed Sale and the scheduling of the Approval Hearing. Second, it seeks approval of the proposed Sale of the Purchased Assets and related transactions following the conclusion of the Approval Hearing.

146364606.7

**BASIS FOR RELIEF**

24.     In accordance with Bankruptcy Rule 6004, sales of property rights outside the ordinary course of business may be by private sale or public auction.  The Trustee has determined that a Sale of the Purchased Assets to the Purchaser under the Agreement, or alternatively, to the Successful Bidder under a Modified Agreement, will enable the Trustee to obtain the most consideration possible for the Debtor's assets. The proposed Bidding Procedures will facilitate that objective.

        A.     **The Bidding Procedures and the Agreement Are Reasonable and Appropriate**

25.     Courts have made clear that a trustee or debtor's business judgment is entitled to substantial deference with respect to the procedures to be used in selling assets from the estate. See, e.g., In re Integrated Resources, Inc., 147 B.R, 650, 656-57 (Bankr. S.D.N.Y. 1992).  The paramount goal in any proposed sale of estate property is to maximize the proceeds received by the estate.  In re Food Barn Stores, Inc., 107 F.3d 558, 564-65 (8th Cir. 1997) ("[A] primary objective of the Code [is] to enhance the value of the estate at hand."); Integrated Resources, 147 B.R. at 659 (same); In re Atlanta Packaging Products, Inc., 99 B.R. 124, 130 (Bankr. N.D. Ga. 1988) (same).  In that regard, courts uniformly recognize that procedures intended to enhance competitive bidding are consistent with the goal of maximizing the value received by the estate and therefore are appropriate in the context of bankruptcy sales.  See, e.g., In re Montgomery Ward Holding Corp., Case No. 97-1409 (PJW) (Bankr. D. Del. Aug. 6, 1997); In re Fruehauf Trailer Corp., Case No. 96-1563 (PJW) (Bankr. D. Del. Feb. 26, 1997); Integrated Resources, 147 B.R. at 659.

26.     The proposed Bidding Procedures will allow the Trustee to consider Qualified Bids for the Purchased Assets and, if the Trustee receives such Qualified Bids, to conduct the Auction

in a controlled, fair, and open fashion that will encourage participation by financially able Bidders who demonstrate the ability to close a transaction. Although consummation of the Sale to the Purchaser under the Agreement is itself a successful outcome in this case, an Auction (to the extent another Qualified Bid is submitted) will increase the likelihood that the Trustee receives the greatest possible consideration for the Purchased Assets. The Bidding Procedures also set forth a schedule for achieving these objectives in an expeditious manner, balancing the extensive marketing already performed and the Trustee's desire to maximize recovery for the benefit of the Debtor's estate, with the need to move quickly to avoid the accrual of costly administrative expenses. Moreover, the proposed Agreement will also promote these objectives by providing a uniform basis for potential Bidders to bid and the Trustee to analyze Qualified Bids.

27. For these reasons, the Trustee requests that the Court authorize the Bidding Procedures and the proposed Agreement on the terms and conditions set forth in the Agreement and Bidding Procedures.

    **B.**    **The Sale of the Debtor's Right, Title, and Interest in the Purchased Assets By Auction to the Best and Highest Bidder, Free and Clear of Liens, Claims, and Encumbrances, is Appropriate Under 11 U.S.C. § 363**

28. Section 363(b) of the Bankruptcy Code provides that a trustee "after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate." See 11 U.S.C. § 363(b)(1).

29. To approve a use, sale or lease, other than in the ordinary course of business, the Court must find "some articulated business justification." See In re Martin (Myers v. Martin), 91 F.3d 389, 395 (3d Cir. 1996); In re Abbotts Dairies of Pennsylvania. Inc., 788 F. 2d 143 (3d Cir. 1986) (requiring good faith purchasing); In re Delaware and Hudson Rv. Co., 124 B.R. 169 (D. Del. 1991) (concluding that requirements for a sale outside ordinary course of business included

sound business purpose, adequate and reasonable notice, fair and reasonable price, and good faith purchaser).

30.     Although 11 U.S.C. § 363(b) does not specify a standard for determining when it is appropriate for a court to authorize the use, sale, or lease of property of the estate, courts in this District have required that such use, sale, or lease be based upon a trustee's sound business judgment.  See, e.g., In re Decora Indus., Inc., 2002 WL 32332749, *2 (D. Del. May 20, 2002); In re Delaware & Hudson Ry. Co., 124 B.R. at 176; In re Montgomery Ward Holding Corp., 242 B.R. 147, 153 (Bankr. D. Del. 1999).  A trustee's showing of sound business judgment need not be unduly exhaustive; instead, the trustee is "simply required to justify the proposed disposition with sound business reasons."  In re Baldwin United Corp., 43 B.R. 888, 906 (Bankr. S.D. Ohio 1984).

31.     Bankruptcy courts are given substantial discretion in deciding whether to authorize a sale of the debtor's assets outside of the ordinary course of business.  See In re Chateaugay Corp., 973 F.2d 141, 144 (2d Cir. 1992).

32.     The Trustee will have amply demonstrated at the Approval Hearing sound business judgment in entering into the Agreement or Modified Agreement with the Successful Bidder, providing for the Sale of the Purchased Assets.  The Sale of the Purchased Assets presents the best opportunity to maximize the value for the Debtor's estate.  Pursuant to the Agreement submitted by the Purchaser or the Modified Agreement submitted by the Successful Bidder, the Successful Bidder will provide substantial consideration to the Debtor's estate.  Namely, the consideration to be paid by the Purchaser or Successful Bidder for the Purchased Assets and elimination of the DIP Loan Claim.  The proposed Agreement will provide for payment of the Purchase Price by the Purchaser or Successful Bidder. Accordingly, the value to be obtained for the Debtor's estates

through this process is meaningful and should maximize the result for the Debtor's creditors. The Trustee submits that the proposed Sale satisfies the business judgment test.

33. In addition, based on Newmark's extensive marketing efforts, the Trustee submits that the consideration to be paid by the proposed Purchaser under the Agreement or by the Successful Bidder under a Modified Agreement will be fair and reasonable. The fairness and reasonableness of the consideration to be paid for the Debtor's assets by the proposed Purchaser, or by such other Successful Bidder, will be conclusively demonstrated by the exposure of the opportunity to the marketplace. Ultimately, if no party offers consideration that materially exceeds the consideration to be provided by the Purchaser, on substantially similar terms as are set forth in the Agreement, it will be clear that the consideration being paid by the Purchaser is the highest and best available. Likewise, if another party overbids and becomes the Successful Bidder, it will be clear that the consideration being paid by the Successful Bidder is the best available. Accordingly, the market check to be provided through the Auction process will demonstrate the fairness and reasonableness of the consideration being received.

34. For all of these reasons, the Trustee has determined that the best—if not only—viable opportunity to maximize value for the Debtor's estate is to sell the Purchased Assets as set forth in this Sale and Bidding Procedures Motion. Accordingly, it is a valid exercise of the Trustee's business judgment to seek approval of the Bidding Procedures and the Sale.

    **C.**    **Approval of Sale Free and Clear of All Liens, Claims, Interests, Encumbrances and Liabilities**

35. Additionally, the Trustee respectfully submits that it is appropriate that the Sale to the best and highest prevailing bidder at the Auction be free and clear of liens, claims, interests, and encumbrances pursuant to 11 U.S.C. §§ 105 and 363 and Fed. R. Bankr. P. 6004, with any such liens, claims, interests, and encumbrances attaching to the proceeds from the Auction and

15

Sale to the same extent, validity, and priority as existed prior to the Auction and Sale.

36. Pursuant to section 363(f) of the Bankruptcy Code, the Court may authorize the sale of assets free and clear of existing liens, claims, interests and encumbrances if: (a) applicable non-bankruptcy law permits the sale of such property free and clear of such interest; (b) the entity holding the lien, claim or encumbrance consents to the proposed sale; (c) such interest is a lien and the price at which such property is sold is greater than the aggregate value of all liens on such property; (d) such interest is in bona fide dispute; or (e) such entity could be compelled in a legal or equitable proceeding to accept a money satisfaction of such interest. 11 U.S.C. § 363(f). As 11 U.S.C. § 363(f) is stated in the disjunctive, when proceeding pursuant to 11 U.S.C. § 363(b), it is only necessary to meet one of the five conditions of 11 U.S.C. § 363(f).

37. The Trustee proposes to sell the Purchased Assets by Auction to the best and highest prevailing bidder, which the Trustee submits would represent the fair market value of the Debtor's right, title, and interest in the Purchased Assets. Additionally, the AJ Group Creditors have consented to the relief requested herein and the Auction and Sale of the Purchased Assets to the highest prevailing bidder pursuant to 11 U.S.C. § 363(f)(2). Moreover, the Trustee proposes that the absence of any objections to the entry of the order approving this Motion, following the provision of notice, be deemed to "consent" to the Sale of the Debtor's right, title, and interest in the Purchased Assets pursuant to 11 U.S.C. § 363(f)(2). As such, the requirements of 11 U.S.C. § 363(f) are satisfied.

38. Accordingly, in the exercise of the Trustee's business judgment, the Trustee submits that the Auction and Sale of the Purchased Assets to the highest prevailing bidder subject to the terms of the Agreement or Modified Agreement, free and clear of liens, claims, interests, and encumbrances pursuant to 11 U.S.C. §§ 105 and 363 and Fed. R. Bankr. P. 6004, should be

approved.

### D. The Purchaser or Successful Bidder Is A Good Faith Purchaser And Is Entitled To The Full Protections Of Section 363(m) Of The Bankruptcy Code

39. The Trustee requests that the Court find that the Purchaser or Successful Bidder is entitled to the full protections of 11 U.S.C. § 363(m). Courts have indicated that a party would have to show fraud or collusion between the buyer and the debtor in possession or trustee or other bidders in order to demonstrate a lack of good faith. See In re Colony Hill Assocs., 111 F.3d 269, 276 (2d Cir. 1997) ("Typically, the misconduct that would destroy a purchaser's good faith status at a judicial sale involves fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders."); See also In re Angelika Films 57th, Inc., 1997 U.S. Dist. LEXIS 7463 at *19-*28 (S.D.N.Y. May 29, 1997).

40. Courts repeatedly have concluded that the sale of a debtor's principal assets and/or substantially all of its assets is appropriate where there are sound business reasons and no evidence of fraud or collusion. See In re Abbotts Dairies of Penn., Inc., 788 F.2d 143 (3rd Cir. 1986) (sale of all assets appropriate where purchaser acted in good faith, and there was no fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders); In re Trans World Airlines, Inc., 2001 Bankr. LEXIS 980 (Bankr. D Del. 2001) (citing Abbotts Dairies); In re Delaware & Hudson Ry. Co., 124 B.R. 169, 178-79 (D. Del. 1991).[10] As discussed, there is ample business justification for the proposed Sale of the

---

[10] See also In re Lionel Corp., 722 F.2d 1063, 1071 (2d Cir. 1983) (sale of estate's most significant asset justified where supported by sound business reasons); Stephens Industries, Inc. v. McClung, 789 F.2d 386 (6th Cir. 1986) (sale of substantially all assets of estate authorized where "a sound business purpose dictates such action"); In re Coastal Industries, Inc., 63 B.R. 361 (Banks. N.D. Ohio 1986); In re Apex Oil Comp., 92 B.R. 847 (Bankr. E.D. Mo. 1988) (applying the "fair and reasonable" test to the sale of substantially all assets under section 363 and finding that the debtor articulated sufficient business reasons for approval of sale); In re Charlesbank Laundry Co., 37 B.R. 20 (Bankr. D. Mass. 1983) ("A sale of all assets in Chapter 11 *is* appropriate if the provisions of 11 U.S.C. Section 363 are followed, the bid is fair and reasonable and the sale is in the best interests of the estate and creditors"); In re Ancor Exploration Comp., 30 B.R. 802 (Bankr. N.D. Okla. 1983) ("conclud[ing] the bankruptcy court should have wide latitude in approving even a private sale of all or substantially all of the estate assets not in the ordinary course of

Purchased Assets, the Sale and the Agreement have been pursued in good faith, and there has been no fraud or collusion between the Trustee, the proposed Purchaser or any other bidder. In addition, the Agreement will be the product of extensive, arm's length negotiations between the Trustee and the Purchaser or the Successful Bidder at Auction.

41. Further, the Purchaser or any Successful Bidder are both aware that the Trustee is free to deal with any other party interested in acquiring the Purchased Assets. In fact, the Bidding Procedures and Auction process contemplated by this Sale and Bidding Procedures Motion make this point abundantly clear. At the Approval Hearing, the Trustee will be able to demonstrate that the Purchaser and any Successful Bidder has also complied with the Bidding Procedures Order and agreed to subject its bid to the competitive Bidding Procedures. Additionally, all payments to be made by the Successful Bidder and other agreements or arrangements entered into by any Successful Bidder in connection with the Sale will have been disclosed.

42. In this case, the Trustee will be able to show to the Court at the Sale Hearing that the terms and conditions of the Agreement with the Purchase or Modified Agreement with the Successful Bidder, were negotiated by the Trustee and the respective parties at arm's length and in good faith. In this regard, the Trustee intends to offer evidence at the Approval Hearing to show that such Successful Bidder is entitled to the protection of 11 U.S.C. § 363(m).

E. **Waiver Of Fourteen-Day Stay Period**

43. The Trustee requests that the Court waive the requirements under Fed. R. Bankr. P. 6004(h), so that any Sale of the Purchased Assets may close immediately rather than being subject to the fourteen (14) day waiting period outlined in Fed. R. Bankr. P. 6004(h).

---

business under §363(b). However, each such proposed sale must be examined from its own facts to determine whether approval is justified").

44. Fed. R. Bankr. P. 6004(h) provides that an order authorizing the "use, sale, or lease of property … is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h).

45. The purpose of Fed. R. Bankr. P. 6004(h) is to provide sufficient time for an objecting party to appeal before an order can be implemented. See Advisory Committee Notes to Fed. R. Bankr. P. 6004(h). Although Fed. R. Bankr. P. 6004(h) and the Advisory Committee Notes are silent as to when a court should "order otherwise" and eliminate or reduce the 14-day stay period, COLLIER suggests that the 14-day stay period should be eliminated to allow a sale or other transaction to close immediately "where there has been no objection to the procedure." 10 COLLIER ON BANKRUPTCY, ¶ [6004.11], 6004-18 (Alan N. Resnick & Henry J. Sommer eds., 16th ed.). COLLIER further provides that if an objection is filed and overruled, and the objecting party informs the court of its intent to appeal, the stay may be reduced to the amount of time actually necessary to seek a stay, unless the court determines that the need to proceed sooner outweighs the interests of the objecting party. Id.

46. As set forth above, conducting the Auction and Sale of the Purchased Assets under the Bidding Procedures will generate the highest amount of proceeds for the Debtor's estate because it will allow sufficient time to market the Purchased Assets and prepare the Purchased Assets for the Auction. Doing so on the proposed timeline without a stay period is equally critical to maintain the value of the Agreement and avoid the accrual of potentially significant carrying costs. Therefore, the Trustee hereby requests that the Court waive the 14-day stay period under Fed. R. Bankr. P. 6004(h).

## NOTICE

47. Notice of this Motion will be provided to (i) the Office of the United States Trustee

for the District of Delaware, (ii) counsel for the Receiver, (iii) counsel for the Debtor's primary prepetition lenders, the AJ Group Creditors and TNJ Holdings Inc; (iv) counsel for the landlord for the Leased Property; (v) counsel for Geekplus America Inc.; and (vi) all parties who have expressed interest in purchasing the property subject to the proposed sale.  The Trustee submits that no other or further notice need be provided.

## CONCLUSION

WHEREFORE, the Trustee respectfully requests that the Court grant the Sale and Bidding Procedures Motion and enter the Bidding Procedures Order attached hereto as **Exhibit "A"**, and following the subsequent Approval Hearing, enter the Approval Order, and grant such other relief as this Court deems proper and just.

Respectfully submitted,

**FOX ROTHSCHILD LLP**

By: */s/ Seth A. Niederman*
Seth A. Niederman
Delaware Bar No. 4588
919 North Market Street, Suite 300
Wilmington, DE  19899-2323
Phone (302) 654-7444/Fax (302) 656-8920
sniederman@foxrothschild.com

        -and-

Michael G. Menkowitz
Jesse M. Harris
2000 Market Street, 20th  Floor
Philadelphia, PA  19103-3222
Phone (215) 299-2000/Fax (215) 299-2150
mmenkowitz@foxrothschild.com
jesseharris@foxrothschild.com

Dated:  June 7, 2023

*Counsel for Alfred T. Giuliano, Chapter 7 Trustee for the estate of Project Verte, Inc.*

146364606.7