**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re:<br><br>PROJECT VERTE INC.,<br><br>Debtor. | Chapter 7<br><br>Case No. 23-10101-LSS<br><br>**Hearing: August 24, 2023 at 9:45 a.m. ET**<br>**Obj. Deadline: August 3, 2023 at 4:00 p.m. ET** |

**CHAPTER 7 TRUSTEE'S MOTION FOR AN**
**ORDER APPROVING SETTLEMENT AGREEMENT AND RELEASE BY AND**
**AMONG THE CHAPTER 7 TRUSTEE, DON A. BESKRONE AS RECEIVER, AND**
**ASHBY & GEDDES AS RECEIVER COUNSEL**

Alfred T. Giuliano, the Chapter 7 Trustee for the estate of Project Verte Inc. (the "Debtor"), through his counsel, Fox Rothschild LLP, respectfully requests the entry of an order approving the Settlement Agreement and Release (the "Agreement")[1] by and among the Trustee, Don A. Beskrone, Esq. solely in his capacity as the state court-appointed receiver for Project Verte Inc. (the "Receiver"), and Ashby & Geddes, P.A. as counsel for the Receiver ("Ashby & Geddes", together with the Receiver, the "Receivership Creditors", and collectively with the Trustee, the "Parties") pursuant to Fed. R. Bankr. P. 9019 (the "Motion").[2]  In support of the Motion, the Trustee respectfully represents as follows:

**JURISDICTION**

1.      This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (O).

2.      Venue of this proceeding and this Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Agreement.
[2] A copy of the Agreement is attached hereto as **Exhibit "A"** and incorporated by reference herein.

3.      The predicate for the relief sought herein is Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## BACKGROUND

### A.      Factual Background

4.      On January 26, 2023 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court").

5.      On January 27, 2023, the Office of the United States Trustee appointed the Trustee as Chapter 7 trustee, which appointment remains in effect.

6.      Prior to the Petition Date, the Debtor operated as a full circle e-commerce platform that used automated fulfillment centers, proprietary software, and blockchain technology to service its customers. The Debtor had two lines of business: a fulfillment business ("Fulfillment Business") and a software services business ("Software Services Business").

7.      Prior to the Petition Date, on August 8, 2022, AC Group Holdings LLC ("AC Group"), a stockholder and significant creditor of the Debtor, filed a motion (the "Receivership Motion") with the Delaware Court of Chancery, in and for New Castle County (the "Chancery Court"), requesting appointment of the Receiver to sell assets relating to the Fulfillment Business and conduct an orderly wind-up of the Debtor's remaining assets and affairs.

8.      In the Receivership Motion, it was indicated that if appointed, the Receiver would engage the law firm of Ashby & Geddes as his legal counsel, and a retainer account funded by AC Group in the amount of $75,000 would be established in connection with anticipated fees and costs (the "Retainer"), with the Retainer to be held in the Ashby & Geddes client trust account.

147465135.2

9.      On August 25, 2022, the Chancery Court entered an order (the "Receivership Order") granting the Receivership Motion.  A copy of the Receivership Order is attached hereto as **Exhibit "B"**.

10.      Immediately following entry of the Receivership Order, the Receivership Creditors commenced work in connection with a potential going concern sale of the Debtor's Fulfillment Business and related assets, including negotiating and drafting an asset purchase agreement with an identified and interested third-party purchaser.  Ultimately, no court-approved sale of the Fulfillment Business and related assets was achieved in the Chancery Court receivership proceedings.  But after significant efforts concluded with respect to that proposed sale, the Receiver and his counsel turned their attention to efforts needed to market and sell the Debtor's Software Services Business and related assets.

11.      On January 20, 2023, the Receivership Creditors obtained Chancery Court approval to sell the Software Services Business and related assets to an affiliate formed by a group of the Debtor's senior secured lenders (which group included AC Group).  Upon closing, that approved sale netted sale proceeds of over $1.1 million.  This bankruptcy case was filed shortly thereafter.[3]

12.      After the Petition Date, the Receivership Creditors maintained and fulfilled responsibilities, such as preparing for creditor meetings, preparing and filing the Debtor's respective schedules of assets and liabilities and statement of financial affairs, providing information to the Trustee in response to his inquiries, transferring the net sale proceeds to the Trustee, preparing and filing an accounting, preparing and filing status reports required by the Chancery Court, and other logistical duties.  Neither the Receiver nor Ashby & Geddes have

---

[3] The Receiver also obtained Chancery Court authority to cause to be filed a bankruptcy petition for Project Verte Inc.

147465135.2

received any compensation or reimbursement to date, whether for prepetition or postpetition services rendered or costs incurred.

B.    **Disputed Claims and Negotiation of the Agreement Between the Parties**

13.    For prepetition and postpetition services rendered and expenses incurred, the Receiver has asserted and filed an administrative priority claim in the amount of at least $208,367.52, pursuant to sections 543(c)(1) and (2), 503(b)(3)(E), and 503(b)(4) of the Bankruptcy Code.  A copy of the claims filed by the Receiver, including attachments, is attached hereto as **Exhibit "C"**.

14.    For prepetition and postpetition services rendered and expenses incurred, Ashby & Geddes has asserted and filed an administrative priority claim in the amount of at least $530,346.64, pursuant to sections 543(c)(1) and (2), 503(b)(3)(E), and 503(b)(4) of the Bankruptcy Code.  A copy of the claims filed by Ashby & Geddes, including attachments, is attached hereto as **Exhibit "D"**.

15.    The Trustee has reviewed the extent, validity and priority of the Receivership Creditors' respective claims against the Estate. After such review and extensive arms-length negotiations, the Parties have agreed to resolve and compromise all remaining outstanding claims and issues in accordance with the terms set forth in the Agreement, subject to Bankruptcy Court approval.

C.    **Salient Provisions of the Agreement**

16.    A summary of the pertinent terms of the Agreement are as follows:[4]

a.    ***Allowed Claims of Receivership Creditors.***

---

[4] To the extent there is any inconsistency between the summary of settlement terms herein and the terms contained in the Agreement, the terms in the Agreement control.

147465135.2

i.     Receiver shall have allowed administrative claims in the total aggregate amount of $169,240.71 against the Estate, broken down as follows (collectively, the "Receiver Administrative Claim"):

- allowed administrative claim, pursuant to sections 503(b)(3)(E) and 543(c)(2) of the Bankruptcy Code in the amount of $161,131.88, representing compensation for the Receiver's prepetition services rendered from August 25, 2022, through the Petition Date.

- allowed administrative claim, pursuant to sections 503(b)(3)(E) and 543(c)(2) of the Bankruptcy Code, in the amount of $1,203.32, representing reimbursements for the Receiver's prepetition expenses incurred from August 25, 2022, through the Petition Date.

- allowed administrative claim, pursuant to sections 503(b)(3)(E) and 543(c)(2) of the Bankruptcy Code, in the aggregate amount of $6,905.51, representing compensation for the Receiver's postpetition services rendered.

ii.     Ashby & Geddes shall have allowed administrative claims in the total aggregate amount of $430,759.29 against the Estate, broken down as follows (collectively, the "Ashby Administrative Claim"):

- allowed administrative claim, pursuant to sections 503(b)(4) and 543(c)(1) of the Bankruptcy Code, in the amount of $358,836.90, representing compensation for Ashby & Geddes' prepetition services rendered to the Receiver from August 25, 2022, through the Petition Date.

- allowed administrative claim, pursuant to sections 503(b)(4) and 543(c)(1) of the Bankruptcy Code, in the amount of $20,929.68, representing reimbursements for Ashby & Geddes' prepetition expenses incurred from August 25, 2022, through the Petition Date.

- allowed administrative claim, pursuant to sections 503(b)(4) and 543(c)(1) of the Bankruptcy Code, in the amount of $50,267.62, representing compensation for Ashby & Geddes' postpetition services rendered.

- allowed administrative claim, pursuant to sections 503(b)(4) and 543(c)(1) of the Bankruptcy Code, in the amount of $725.09, representing reimbursements for Ashby & Geddes' postpetition expenses incurred.

147465135.2

**b.** ***Payment of Receiver Administrative Claim.*** The Trustee shall remit and make a partial payment of $119,240.71 on account of the allowed Receiver Administrative Claim within ten (10) business days after occurrence of the Effective Date; provided, however, that such partial payment shall be inclusive of the Retainer, which shall be released from the Ashby Geddes client trust account and applied to the allowed Receiver Administrative Claim upon occurrence of the Effective Date. For the avoidance of doubt, the Trustee shall only be responsible for remitting and paying $44,240.71 on account of the partial payment ($119,240.71) to be made as set forth herein, with the remainder of that partial payment to be funded by application of the Retainer. The remaining unpaid balance of the allowed Receiver Administrative Claim (i.e., $50,000) will be paid, in the exercise of the Trustee's sole and reasonable determination, upon there being sufficient liquidity in the Estate to allow for (i) full payment of all other asserted administrative expense claims under section 507(a)(2) of the Bankruptcy Code, and (ii) a pro rata distribution of at least $100,000 to the holders of allowed nonpriority general unsecured claims.

**c.** ***Payment of Ashby Administrative Claim.*** The Trustee shall remit and make a partial payment of $380,759.29 on account of the allowed Ashby Administrative Claim within ten (10) business days after occurrence of the Effective Date. The remaining unpaid balance of the allowed Ashby Administrative Claim (i.e., $50,000) will be paid, in the exercise of the Trustee's sole and reasonable determination, upon there being sufficient liquidity in the Estate to allow for (i) full payment of all other asserted administrative expense claims under section 507(a)(2) of the Bankruptcy Code, and (ii) a pro rata distribution of at least $100,000 to the holders of allowed nonpriority general unsecured claims.

**d.** ***Mutual Releases.***

    (i)   *Release of Receivership Creditors.* Upon the Effective Date, each of the Trustee, the Debtor, and the Estate, releases and discharges the Receivership Creditors (including its members, partners, shareholders, agents, assigns, affiliates and employees), and its attorneys, accountants, consultants, advisors, employees, agents, and representatives (collectively the "Receivership Creditors Released Parties"), of and from any and all actions, suits, debts, liabilities, obligations, dues, sums of money, accounts, controversies, agreements, promises, damages, fees (including but not limited to attorneys' fees), costs, expenses, interest, claims and demands, whether presently existing, or arising in the future, whether known or unknown, suspended or unsuspended, apparent or unapparent, direct or indirect, ascertained or not ascertained, liquidated or unliquidated, contingent or not, matured or unmatured, whether arising in law, equity, or otherwise, which the Trustee, the Debtor, or the Estate, have, had or may have against the Receivership Creditors Released Parties related to or arising from the Chancery Court receivership proceedings, the Bankruptcy

Case, the Receiver Administrative Claim, or the Ashby Administrative Claim, whether arising under contract, tort, statute, common law or otherwise; provided, however, that the Receivership Creditors Released Parties shall not be released from their obligations under the Agreement.

(ii) *Release of the Estate.* Upon occurrence of the Effective Date and timely receipt of the initial partial payments set forth above, each of the Receivership Creditors releases and discharges the Trustee, the Debtor, and the Estate, and each of the attorneys, accountants, consultants, advisors, and representatives of the Estate and the Trustee (the "Estate Released Parties") of and from any and all actions, suits, debts, liabilities, obligations, dues, sums of money, accounts, controversies, agreements, promises, damages, fees (including but not limited to attorneys' fees), costs, expenses, interest, claims and demands, including those claims that were made or could have been made in the Bankruptcy Cases or otherwise, whether presently existing, or arising in the future, whether known or unknown, suspended or unsuspended, apparent or unapparent, direct or indirect, ascertained or not ascertained, liquidated or unliquidated, contingent or not, matured or unmatured, whether arising in law, equity, or otherwise, which the Receivership Creditors have, had or may have against the Estate Released Parties related to or arising from the Chancery Court receivership proceedings, the Bankruptcy Case, the Receiver Administrative Claim, or the Ashby Administrative Claim, whether arising under contract, tort, statute, common law or otherwise; provided, however, that the Estate Released Parties shall not be released from their obligations under the Agreement and for the avoidance of doubt, there shall be no waiver or release by the Receivership Creditors of any rights, claims, or protections afforded each of them under paragraph 9 of the Receivership Order.

(iii) *Release of each of AC Group Holdings LLC, Chaluts Trust, JG Group Holdings LLC, JGFT LLC, and PGFT LLC.* Upon occurrence of the Effective Date, and in consideration of the AJ Group Released Parties' consent and agreement to application of the Retainer in partial payment and satisfaction of the allowed Receiver Administrative Claim, each of the Receivership Creditors releases and discharges AC Group Holdings LLC, Chaluts Trust, JG Group Holdings LLC, JGFT LLC, and PGFT LLC (including their members, partners, shareholders, agents, assigns, affiliates and employees), and their attorneys, accountants, consultants, advisors, employees, agents, and representatives (collectively the "AJ Group Released Parties") from any and all actions, suits, debts, liabilities, obligations, dues, sums of money, accounts, controversies, agreements, promises, damages, fees (including but not limited to attorneys' fees), costs, expenses, interest, claims and demands, whether presently existing, or arising in the future, whether known or unknown, suspended or unsuspended, apparent or unapparent, direct or indirect, ascertained or not ascertained, liquidated or unliquidated, contingent or not, matured or

7

unmatured, whether arising in law, equity, or otherwise, which the Receivership Creditors have, had or may have against the AJ Group Released Parties related to or arising from the Chancery Court receivership proceedings, the Bankruptcy Case, the Retainer, the Receiver Administrative Claim, or the Ashby Administrative Claim, whether arising under contract, tort, statute, common law or otherwise.

## RELIEF REQUESTED

17.     By and through this Motion, the Trustee seeks entry of an Order authorizing and approving the Agreement pursuant to Bankruptcy Rule 9019.

## BASIS FOR RELIEF REQUESTED

18.     Bankruptcy Rule 9019 provides that "[o]n motion by the [T]rustee and after notice and a hearing, the court may approve a compromise or settlement.  Notice shall be given to creditors, the United States trustee, the debtor. . . and to any other entity as the court may direct." Fed. R. Bankr. P. 9019(a); see also Myers v. Martin (In re Martin), 91 F.3d 389, 393 (3d Cir. 1996).

19.     The Trustee is obligated to maximize the value of the estate and make her decisions in the best interests of all creditors.  See Martin, 91 F.3d at 394.  Indeed, courts generally defer to a trustee's business judgment when there is a legitimate business justification for a trustee's decision.  See Martin, 91 F.3d at 395.

20.     In determining whether a settlement should be approved under Bankruptcy Rule 9019, the Court must "assess and balance the value of the claim that is being compromised against the value to the estate of the acceptance of the compromise proposal."  Id. at 393.  To this end, courts should consider four factors: "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." Id. (citation omitted).

147465135.2

21.      This Court should approve the Agreement because it is supported by sound business justifications and applicable law, the terms of the Agreement are more than reasonable, and the four (4) Martin factors weigh in favor of approval.

22.      First, the Agreement reflects a balance between the Bankruptcy Code's allowance of administrative expense claims on account of services performed by a prepetition custodian and its professionals, and the benefits provided by the Receiver and Ashby & Geddes. See 11 U.S.C. §§105, 503(b)(3)(E), 503(b)(4), 543(c)(1), 543(c)(2).[5]

23.      The Receivership Creditors initially asserted claims totaling $738,714.16.  At the request of the Trustee, the Receiver and Ashby & Geddes both provided invoices detailing the services performed and the time spent on such services. The Trustee then performed research on the allowability of such claims and to what extent such claims should be allowed.  After several rounds of negotiations, the Parties agreed to total aggregate claims of $600,000, a reduction of nearly 20% of the combined claims asserted by the Receiver and Ashby & Geddes. The Trustee believes that prevailing on any potential challenges to the claims beyond the proposed agreed reductions as reflected in the Agreement would prove difficult.  Thus, the Agreement reaches the appropriate amounts for such claims. It also should be emphasized the Agreement provides that before the Receiver and Ashby & Geddes receive full payment on their allowed claims under the terms of the Agreement (each essentially has agreed to a $50,000 payment holdback), the Trustee will need to determine that sufficient liquidity exists in the estate to allow for (i) full payment of

---

[5]  See also *In the Matter of Bodenheimer, Jones, Szwak, & Winchell L.L.P.,* 592 F.3d 664, 671 (5th Cir. 2009) (reviewing bankruptcy court's allowance of fees and expenses for prepetition custodian and his counsel) (citations omitted); *In re Lake Region Operating Corp.*, 238 B.R. 99, 101 (Bankr. M.D. Pa. 1999) (upon bankruptcy court review and approval, estate funds will be made available to pay compensation and expenses incurred by prepetition receiver); *In re Snergy Properties, Inc.*, 130 B.R. 700, 704-05 (Bankr. S.D. N.Y. 1991) (bankruptcy court reviewed and approved fees and expenses requested by prepetition receiver, including his legal expenses).

147465135.2

all other asserted administrative expense claims under section 507(a)(2) of the Bankruptcy Code, and (ii) a pro rata distribution of at least $100,000 to the holders of allowed nonpriority general unsecured claims.

24.     Second, the nature of the dispute would not result in any collection of a judgment against the Receiver or Ashby & Geddes, even if the Trustee did prevail. Rather, the dispute involves claims against the Debtor's estate. This factor is therefore inapplicable.

25.     Third, objecting to and defending against the Receiver and Ashby & Geddes's claims to conclusion would require, among other things, discovery, testimony, and briefing. In light of these significant costs and risks associated with litigation, as well as the voluntary reduction of the claims as reflected in the terms of the Agreement, the Trustee submits, in the exercise of his business judgment, that the Agreement proposed herein is reasonable and will maximize the benefit to the estate with the least cost.

26.     In other words, the Agreement represents the most realistic and cost-efficient way of resolving the claims in a manner that maximizes the recovery for the Debtor's creditors. The paramount interests of the creditors therefore favors approval of the Agreement.

## NOTICE

Notice of this Motion will be provided to: (a) the Office of the United States Trustee for the District of Delaware; (b) counsel for the Debtor; (c) counsel for the Receiver; (d) Ashby & Geddes; (d) all parties who have filed timely proofs of claim; and (e) all parties requesting notice in this proceeding pursuant to Bankruptcy Rule 2002.  The Trustee submits that such notice is sufficient, and that no other or further notice is necessary or required.  The Trustee requests that the Court find that such notice is adequate and proper.

147465135.2

## <u>CONCLUSION</u>

WHEREFORE, the Trustee respectfully requests that this Court enter an Order authorizing and approving the Agreement pursuant to Bankruptcy Rule 9019 and granting such other and further relief as the Court deems appropriate.

Respectfully submitted,

**FOX ROTHSCHILD LLP**

By: _/s/ Seth A. Niederman_
Seth A. Niederman, Esquire
Delaware Bar No. 4588
919 North Market Street, Suite 300
P.O. Box 2323
Wilmington, DE 19899-2323
Phone (302) 654-7444/Fax (302) 656-8920
sniederman@foxrothschild.com

-and-

Michael G. Menkowitz, Esquire
Jesse M. Harris, Esquire
2000 Market Street, 20th Floor
Philadelphia, PA 19103-3222
Phone (215) 299-2000/Fax (215) 299-2150
mmenkowitz@foxrothschild.com
jesseharris@foxrothschild.com

Dated: July 19, 2023

*Counsel for Alfred T. Giuliano,*
*Chapter 7 Trustee for the estate of Project Verte*
*Inc.*

11

147465135.2