# Exhibit "A"

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release (the "Agreement") is made July 19, 2023, by and among Alfred T. Giuliano, solely in his capacity as the Chapter 7 Trustee (the "Trustee") for the bankruptcy estate (the "Estate") of Project Verte Inc. (the "Debtor"), Don A. Beskrone, Esq., solely in his capacity as the state court receiver (the "Receiver") appointed for Project Verte, Inc., and the law firm Ashby & Geddes, P.A., as counsel for the Receiver ("Ashby & Geddes", and together with the Receiver, the "Receivership Creditors", and collectively with the Trustee, the "Parties").

## RECITALS

### Background

A. On January 26, 2023 ("Petition Date"), the Debtor, through the Receiver after he obtained state court approval to do so, filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code in the Bankruptcy Court for the District of Delaware (the "Bankruptcy Court").

B. On January 27, 2023, the Office of the United States Trustee appointed the Trustee as Chapter 7 trustee, which appointment remains in effect [D.N. 6].

C. Prior to the Petition Date, the Debtor operated as a full circle e-commerce platform that used automated fulfillment centers, proprietary software, and blockchain technology to service its customers. The Debtor had two lines of business: a fulfillment business ("Fulfillment Business") and a software services business ("Software Services Business").

D. Prior to the Petition Date, on August 8, 2022, AC Group Holdings LLC ("AC Group"), a stockholder and significant creditor of the Debtor, filed a motion (the "Receivership Motion") with the Delaware Court of Chancery, in and for New Castle County (the "Chancery Court"), requesting appointment of the Receiver to sell assets relating to the Fulfillment Business and conduct an orderly wind-up of the Debtor's remaining assets and affairs.

E. In the Receivership Motion, it was indicated that if appointed, the Receiver would engage the law firm of Ashby & Geddes as his legal counsel, and a retainer account funded by AC Group in the amount of $75,000 would be established in connection with anticipated fees and costs (the "Retainer"), with the Retainer to be held in the Ashby & Geddes client trust account. On August 25, 2022, the Chancery Court entered an order (the "Receivership Order") granting the Receivership Motion.

F. Immediately following the granting of the Receivership Motion, the Receivership Creditors commenced work in connection with a potential going concern sale of the Debtor's Fulfillment Business and related assets, including negotiating and drafting an asset purchase agreement with an identified and interested third-party purchaser. Ultimately, no court-approved sale of the Fulfillment Business and related assets was achieved in the Chancery Court receivership proceedings. But after efforts concluded with respect to that proposed sale, the Receiver and his counsel turned their attention to efforts needed to market and sell the Debtor's Software Services Business and related assets.

G.     On January 20, 2023, the Receivership Creditors obtained Chancery Court approval to sell the Software Services Business and related assets to an affiliate formed by a group of the Debtor's senior secured lenders (which group included AC Group).  Upon closing, that approved sale netted sale proceeds of over $1.1 million.  A bankruptcy petition for the Debtor was filed shortly thereafter.

H.     After the Petition Date, the Receivership Creditors maintained and fulfilled responsibilities, such as preparing for creditor meetings, preparing and filing the Debtor's respective schedules of assets and liabilities and statement of financial affairs, providing information to the Trustee in response to his inquiries, transferring the net sale proceeds to the Trustee, preparing and filing an accounting, preparing and filing status reports required by the Chancery Court, and other logistical duties.  For the avoidance of doubt, neither the Receiver nor Ashby & Geddes have received any compensation or reimbursement to date, whether for prepetition or postpetition services rendered or costs incurred.

## Reconciliation

I.     For prepetition and postpetition services rendered and expenses incurred, the Receiver has asserted and filed an administrative priority claim in the amount of at least $208,367.52, pursuant to sections 543(c)(1) and (2), 503(b)(3)(E), and 503(b)(4) of the Bankruptcy Code.

J.     For prepetition and postpetition services rendered and expenses incurred, Ashby & Geddes has asserted and filed an administrative priority claim in the amount of at least $530,346.64, pursuant to sections 543(c)(1) and (2), 503(b)(3)(E), and 503(b)(4) of the Bankruptcy Code.

K.     The Trustee has reviewed the extent, validity and priority of the Receivership Creditors' respective claims against the Estate. After such review and extensive arms-length negotiations, the Parties have agreed to resolve and compromise all remaining outstanding claims and issues in accordance with the terms set forth herein.

**NOW, THEREFORE,** for good and valuable consideration, including the mutual covenants set forth below, the receipt and sufficiency of which the Parties hereby acknowledge, and intending to be legally bound, the Parties hereby agree as follows, subject to Bankruptcy Court approval:

## SETTLEMENT TERMS

**1.     Incorporation.**  The Recitals set forth above are hereby incorporated in full and made a part of this Agreement.  However, the Recitals are not to be construed as stating uncontested facts or deemed to be admissions or concessions of any kind by any of the Parties.

2. **Court Approval.** Promptly after execution hereof by the Parties, the Trustee shall file with the Bankruptcy Court a Motion for entry of an Order approving this Agreement pursuant to Fed. R. Bankr. P. 9019. If this Agreement is not approved by the Bankruptcy Court, then this Agreement shall be deemed null and void, of no force and effect, and without prejudice to any Party. This Agreement shall be deemed effective (the "Effective Date") on the date the Bankruptcy Court enters a final Order approving this Agreement.

3. **Allowed Claims of Receivership Creditors.**

   (a) Receiver shall have allowed administrative claims in the Bankruptcy Case and against the Estate as follows (collectively, the "Receiver Administrative Claim"):

   i. allowed administrative claim, pursuant to sections 503(b)(3)(E) and 543(c)(2) of the Bankruptcy Code in the amount of $161,131.88, representing compensation for the Receiver's prepetition services rendered from August 25, 2022, through the Petition Date.

   ii. allowed administrative claim, pursuant to sections 503(b)(3)(E) and 543(c)(2) of the Bankruptcy Code, in the amount of $1,203.32, representing reimbursements for the Receiver's prepetition expenses incurred from August 25, 2022, through the Petition Date.

   iii. allowed administrative claim, pursuant to sections 503(b)(3)(E) and 543(c)(2) of the Bankruptcy Code, in the aggregate amount of $6,905.51, representing compensation for the Receiver's postpetition services rendered.

   (b) Ashby & Geddes shall have allowed administrative claims in the Bankruptcy Case and against the Estate as follows (collectively, the "Ashby Administrative Claim"):

   i. allowed administrative claim, pursuant to sections 503(b)(4) and 543(c)(1) of the Bankruptcy Code, in the amount of $358,836.90, representing compensation for Ashby & Geddes' prepetition services rendered to the Receiver from August 25, 2022, through the Petition Date.

   ii. allowed administrative claim, pursuant to sections 503(b)(4) and 543(c)(1) of the Bankruptcy Code, in the amount of $20,929.68, representing reimbursements for Ashby & Geddes' prepetition expenses incurred from August 25, 2022, through the Petition Date.

    iii.    allowed administrative claim, pursuant to sections 503(b)(4) and 543(c)(1) of the Bankruptcy Code, in the amount of $50,267.62, representing compensation for Ashby & Geddes' postpetition services rendered.

    iv.    allowed administrative claim, pursuant to sections 503(b)(4) and 543(c)(1) of the Bankruptcy Code, in the amount of $725.09, representing reimbursements for Ashby & Geddes' postpetition expenses incurred.

**4.** **Payment of Receiver Administrative Claim.** The Trustee shall remit and make a partial payment of $119,240.71 on account of the allowed Receiver Administrative Claim within ten (10) business days after occurrence of the Effective Date; provided, however, that such partial payment shall be inclusive of the Retainer, which shall be released from the Ashby Geddes client trust account and applied to the allowed Receiver Administrative Claim upon occurrence of the Effective Date. For the avoidance of doubt, the Trustee shall only be responsible for remitting and paying $44,240.71 on account of the partial payment ($119,240.71) to be made as set forth herein, with the remainder of that partial payment to be funded by application of the Retainer. The remaining unpaid balance of the allowed Receiver Administrative Claim (i.e., $50,000) will be paid, in the exercise of the Trustee's sole and reasonable determination, upon there being sufficient liquidity in the Estate to allow for (i) full payment of all other asserted administrative expense claims under section 507(a)(2) of the Bankruptcy Code, and (ii) a pro rata distribution of at least $100,000 to the holders of allowed nonpriority general unsecured claims.

**5.** **Payment of Ashby Administrative Claim.** The Trustee shall remit and make a partial payment of $380,759.29 on account of the allowed Ashby Administrative Claim within ten (10) business days after occurrence of the Effective Date. The remaining unpaid balance of the allowed Ashby Administrative Claim (i.e., $50,000) will be paid, in the exercise of the Trustee's sole and reasonable determination, upon there being sufficient liquidity in the Estate to allow for (i) full payment of all other asserted administrative expense claims under section 507(a)(2) of the Bankruptcy Code, and (ii) a pro rata distribution of at least $100,000 to the holders of allowed nonpriority general unsecured claims.

**6.** **Mutual Releases.**

(a)    *Release of Receivership Creditors.* Upon the Effective Date, each of the Trustee, the Debtor, and the Estate, releases and discharges the Receivership Creditors (including its members, partners, shareholders, agents, assigns, affiliates and employees), and its attorneys, accountants, consultants, advisors, employees, agents, and representatives (collectively the "Receivership Creditors Released Parties"), of and from any and all actions, suits, debts, liabilities, obligations, dues, sums of money, accounts, controversies, agreements, promises, damages, fees (including but not limited to attorneys' fees), costs, expenses, interest, claims and demands, whether presently existing, or arising in the future, whether known or

unknown, suspended or unsuspended, apparent or unapparent, direct or indirect, ascertained or not ascertained, liquidated or unliquidated, contingent or not, matured or unmatured, whether arising in law, equity, or otherwise, which the Trustee, the Debtor, or the Estate, have, had or may have against the Receivership Creditors Released Parties related to or arising from the Chancery Court receivership proceedings, the Bankruptcy Case, the Receiver Administrative Claim, or the Ashby Administrative Claim, whether arising under contract, tort, statute, common law or otherwise; provided, however, that the Receivership Creditors Released Parties shall not be released from their obligations under this Agreement.

(b) *Release of the Estate.* Upon occurrence of the Effective Date and timely receipt of the initial partial payments set forth above, each of the Receivership Creditors releases and discharges the Trustee, the Debtor, and the Estate, and each of the attorneys, accountants, consultants, advisors, and representatives of the Estate and the Trustee (the "Estate Released Parties") of and from any and all actions, suits, debts, liabilities, obligations, dues, sums of money, accounts, controversies, agreements, promises, damages, fees (including but not limited to attorneys' fees), costs, expenses, interest, claims and demands, including those claims that were made or could have been made in the Bankruptcy Cases or otherwise, whether presently existing, or arising in the future, whether known or unknown, suspended or unsuspended, apparent or unapparent, direct or indirect, ascertained or not ascertained, liquidated or unliquidated, contingent or not, matured or unmatured, whether arising in law, equity, or otherwise, which the Receivership Creditors have, had or may have against the Estate Released Parties related to or arising from the Chancery Court receivership proceedings, the Bankruptcy Case, the Receiver Administrative Claim, or the Ashby Administrative Claim, whether arising under contract, tort, statute, common law or otherwise; provided, however, that the Estate Released Parties shall not be released from their obligations under this Agreement and for the avoidance of doubt, there shall be no waiver or release by the Receivership Creditors of any rights, claims, or protections afforded each of them under paragraph 9 of the Receivership Order.

(c) *Release of each of AC Group Holdings LLC, Chaluts Trust, JG Group Holdings LLC, JGFT LLC, and PGFT LLC.* Upon occurrence of the Effective Date, and in consideration of the AJ Group Released Parties' consent and agreement to application of the Retainer in partial payment and satisfaction of the allowed Receiver Administrative Claim, each of the Receivership Creditors releases and discharges AC Group Holdings LLC, Chaluts Trust, JG Group Holdings LLC, JGFT LLC, and PGFT LLC (including their members, partners, shareholders, agents, assigns, affiliates and employees), and their attorneys, accountants, consultants, advisors, employees, agents, and representatives (collectively the "AJ Group Released Parties") from any and all actions, suits, debts, liabilities, obligations, dues, sums of money, accounts, controversies, agreements, promises, damages, fees (including but not limited to attorneys' fees), costs, expenses, interest, claims and demands, whether presently existing, or arising in the future,

whether known or unknown, suspended or unsuspended, apparent or unapparent, direct or indirect, ascertained or not ascertained, liquidated or unliquidated, contingent or not, matured or unmatured, whether arising in law, equity, or otherwise, which the Receivership Creditors have, had or may have against the AJ Group Released Parties related to or arising from the Chancery Court receivership proceedings, the Bankruptcy Case, the Retainer, the Receiver Administrative Claim, or the Ashby Administrative Claim, whether arising under contract, tort, statute, common law or otherwise.

7. **Claim Amendment**. Within five (5) business days following occurrence of the Effective Date and timely receipt of the partial payments described above, the Receivership Creditors shall file amended claims that accurately reflect the terms of this Agreement and the Bankruptcy Court order approving same.

8. **No Admission.** Nothing contained herein shall be construed as an admission or concession of any kind, by any of the Parties.

9. **Entire Agreement.** This Agreement sets forth the entire agreement and understanding of the Parties hereto with respect to the subject matter herein and supersedes and merges all prior oral and written agreements, discussions and understandings between the Parties with respect thereto, and none of the Parties shall be bound by any conditions, inducements or representations other than as expressly provided for herein.

10. **Amendment.** No term or provision of this Agreement may be waived, modified or amended except in writing signed by the Party against whom enforcement of the waiver, modification or amendment is sought.

11. **Authority to Execute Agreement.** Each Party covenants, warrants, and represents that it is fully authorized to enter into this Agreement and to carry out the obligations provided for in this Agreement. Where a person has executed this Agreement on behalf of one of the Parties, that person covenants, warrants, and represents that he or she has been authorized to do so.

12. **Governing Law.** This Agreement shall be governed by the U.S. Bankruptcy Code, 11 U.S.C., Title 11, and the internal laws of the State of Delaware, without regard to or application of its principles of conflicts of laws.

13. **Retention of Jurisdiction, Venue.** The Parties expressly agree and consent to retention of jurisdiction by the Bankruptcy Court, and that the Bankruptcy Court shall have exclusive jurisdiction and venue to resolve any matters or disputes arising under or otherwise relating to this Agreement. If, for whatever reason, the Bankruptcy Court determines that it does not have jurisdiction over a particular matter or dispute, the Parties expressly agree that such matter

or dispute shall be heard in the Chancery Court, and the Parties waive any objection to jurisdiction therein.

**14.    Attorneys' Fees and Costs.** Each of the Parties shall pay its own respective costs and attorneys' fees incurred with respect to the issues or matters undertaken in the negotiation and documentation of this Agreement.

**15.    Severability.** In the event that any provision of this Agreement should be held to be void, voidable, or unenforceable, in full or in part, the remaining portions of this Agreement shall remain in full force and effect.

**16.    Counterparts.** This Agreement may be executed in any number of counterparts, each of which when so executed and delivered shall be deemed to be an original and all of which counterparts, taken together, shall constitute one and the same instrument. Delivery of an executed counterpart of this Agreement by facsimile or electronic mail shall be equally as effective as delivery of an original executed counterpart of this Agreement.

**IN WITNESS WHEREOF**, the undersigned have executed this Agreement on behalf of their respective clients as of the date hereof.

**STIPULATED AND AGREED:**

| | |
|---|---|
| **FOX ROTHSCHILD LLP** | **ASHBY & GEDDES, P.A.** |
| By: /s/ Jesse M. Harris | By: /s/ Michael D. DeBaecke |
| Jesse M. Harris, Esquire | Michael D. DeBaecke, Esquire |
| 2000 Market Street, 20th Floor | 500 Delaware Avenue, 8th Floor |
| Philadelphia, PA 19103 | Wilmington, DE 19801 |
| 215-299-2864; 215-299-2150 (Fax) | 302-654-1888; |
| jesseharris@foxrothschild.com | mdebaecke@ashbygeddes.com |
| Attorney for Alfred T. Giuliano, in his sole capacity as Trustee for the estate of Project Verte Inc. | Claimant and Counsel for the Receiver for Project Verte Inc.. |
| Dated: July 19, 2023 | Dated: July 19, 2023 |
| | **Don A. Beskrone, solely in his capacity as Receiver for Project Verte Inc.** |
| | /s/ Don A. Beskrone |
| | Dated: July 19, 2023 |